## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| MARY CRUMPTON, individually and on behalf of all others similarly situated, ) ) ) ) | |
| ) | No.  19 C 8402 |
| *Plaintiff,* ) | |
| ) | Judge Virginia M. Kendall |
| v. ) | |
| ) | |
| OCTAPHARMA PLASMA, INC., ) | |
| ) | |
| *Defendant.* ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Mary Crumpton filed this proposed class action against a plasma-donation company, Octapharma Plasma, Inc. ("Octapharma").  Crumpton alleges Octapharma violated the Illinois Biometric Information Privacy Act ("BIPA").  740 ILCS 14/1, *et seq.*; (Dkt. 1-1).  BIPA prohibits private entities from collecting "biometric identifiers"—including fingerprints—from a person unless the entity obtains informed, written consent and provides certain disclosures.  740 ILCS 14/15(b).  Crumpton alleges Octapharma violated BIPA § 15(b) by using a donor-identification system that relied upon the collection, storage, and use of donors' fingerprints and biometric information without proper written consent and without making required disclosures. (Dkt. 1-1).

Crumpton moves to strike Octapharma's First and Second Affirmative Defenses, raised in Octapharma's answer. (Dkt. 43).  For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

When considering a motion to strike an affirmative defense, courts must take as true all facts alleged in the defense and construe all reasonable inferences in favor of the defendant.[1] *See, e.g., Mittelstaedt v. Gamla-Cedron Orleans LLC*, No. 12 C 5131, 2012 WL 6188548, at *1 (N.D. Ill. Dec. 12, 2012).

Plasma, a component of human blood, is used to create life-saving treatments and therapies for patients suffering various maladies. (Dkt. 16 at 15 ¶¶ 1–2). Octapharma, a company incorporated in Delaware and headquartered in North Carolina, operates a nationwide chain of blood plasma donation centers. (Dkt. 16 at 1 ¶ 1, 3 ¶ 9). Before donating plasma for the first time, Octapharma requires donors to provide a scan of their fingerprint. (Dkt. 16 at 1 ¶ 2). Using this fingerprint scan, Octapharma creates a biometric template as a method of positively identifying individual donors. (Dkt. 16 at 22 ¶ 12). A donor's biometric template is associated with a Donor History Record which includes his or her donation history, results of health screening exams and blood testing, and interviews and questionnaires. (Dkt. 16 at 22 ¶¶ 12–15, 26 ¶¶ 30). Octapharma requires donors to scan their fingerprint each time they donate plasma. (Dkt. 16 at 23 ¶ 15).

Crumpton is an Illinois citizen who donated plasma at Octapharma between June 2017 and August 2018 and submitted a scan of her fingerprint to do so. (Dkt. 16 at 3¶ 8, 8 ¶¶ 28–29). Crumpton filed suit against Octapharma on behalf of a putative class in the Circuit Court of Cook County on December 2, 2019 alleging

---

[1] At the request of the parties, the Court also accepts as true the facts alleged in the Declaration of Monica H. Byrd attached to Octapharma's Response. (Dkt. 45-1; Dkt. 51 at 11 n. 1).

violation of BIPA § 15(a) and § 15(b). (Dkt. 1-1). The action was subsequently removed to federal court on December 23, 2019. (Dkt. 1). Presently before this Court is Crumpton's cause of action under BIPA § 15(b) in which Crumpton alleges Octapharma failed to obtain donors' informed consent or make required disclosures prior to obtaining the fingerprint template. (Dkt. 1-1 ¶ 41).

In its Answer, Octapharma raised various affirmative defenses, the first two of which are the subject of this motion. Octapharma's First Affirmative Defense is that BIPA is preempted by federal law, specifically the Food, Drug, and Cosmetics Act ("FDCA"), the Public Health Act, and the regulations promulgated by the Food and Drug Administration ("FDA") under those laws. (Dkt. 16 at 30–31 ¶¶ 50–56). Octapharma's Second Affirmative Defense is that it is exempt from BIPA. (Dkt. 16 at 31–32 ¶¶ 57–60). Crumpton moves to strike both the First and Second Affirmative Defense. (Dkt. 43).

## LEGAL STANDARD

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which provides "[t]he court may strike form a pleading an insufficient defense[.]" Fed. R. Civ. P. 12(f). Motions to strike are generally disfavored and affirmative defenses "will be stricken only when they are insufficient on the face of the pleadings." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A court should only strike an affirmative defense if it appears beyond a reasonable doubt the pleader can prove no set of facts in support of his defense that would plausibly entitle him to relief. *See, e.g., Mittelstaedt*, No. 12 C 5131, 2012 WL 6188548, at *2. To survive a

motion to strike, an affirmative defense must satisfy a three-part test: "(1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of Federal Rules of Civil Procedure 8 and 9; and (3) the matter must withstand a Rule 12(b)(6) challenge." *Sarkis' Café, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1039 (N.D. Ill. 2014). Bare legal conclusions are insufficient and must be stricken. *Heller*, 883 F.2d at 1294–95 (granting motion to strike affirmative defenses where defendants omitted any short and plain statement of facts and failed to allege necessary elements of a claim). A majority of district court decisions in this circuit apply the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to affirmative defenses, and this Court will do so as well. *See Maui Jim, Inc. v. SmartBuy Guru Enters.*, 286 F. Supp. 3d 926, 938 (N.D. Ill. 2019) (collecting cases).

## DISCUSSION

### A.   Timeliness

Under Rule 12(f), a party seeking to strike an affirmative defense must file a motion within 21 days of being served with the challenged pleading. Fed. R. Civ. P. 12(f)(2). Octapharma filed its Answer on February 3, 2020, meaning Crumpton's deadline to move to strike an affirmative defense was February 24, 2020. (Dkt. 16). However, the Court issued a stay pending the Seventh Circuit's decision regarding standing in *Bryant v. Compass Grp.*, No. 20-1443 on February 13, 2020. (Dkt. 21). This stay was lifted on May 8, 2020. (Dkt. 31). Accounting for the 9 days elapsed

prior to the February 13th stay, the new deadline for Crumpton to move to strike was May 21, 2020. Crumpton filed the present motion to strike on May 28, 2020. (Dkt. 36 at1). However, in response to the ongoing COVID-19 pandemic, the Northern District of Illinois issued a series of General Orders extending "all deadlines [in civil cases], whether set by the court or by the Rules of Civil Procedure or Local Rules." *See* Amended General Order 20-0012 dated March 16, 2020 (extending all deadlines by 21 days); Second Amended General Order 20-0012 dated March 30, 2020 (extending all deadlines by an additional 28 days); Third Amended General Order dated April 24, 2020 (extending all deadlines by an additional 28 days).

Even imagining Crumpton's motion to strike was untimely, Rule 12 empowers a court to act on its own to strike insufficient defenses. Fed. R. Civ. P. 12(f)(1). A court acting under Rule 12(f)(1) has the discretion "to consider a motion to strike at any point in a case" when the court's attention "was prompted by an untimely filed motion." *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1399 (7th Cir. 1991). This Court therefore addresses the merits of Crumpton's motion.

## B.     First Affirmative Defense: Preemption

Preemption, rooted in the Supremacy Clause, recognizes Congress's power to preempt or invalidate state laws through federal legislation. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376–77 (2015). Congress may do so expressly in the statutory language or implicitly through conflict preemption or field preemption. *Id.* Congressional purpose "is the ultimate touchstone in every preemption case" and courts presume state police power has not been preempted. *Medtronic, Inc. v. Lohr*,

518 U.S. 470, 485 (1996). Here, Octapharma argues express, conflict, and field preemption all apply and bar the claims against it under BIPA. (Dkt. 45 at 8–13).

1. *Express Preemption*

Express preemption exists when Congress "declares its intention to preempt state regulation through a direct statement in the text of federal law." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 546 (7th Cir. 2020) (quoting *Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2015)). Octapharma argues the Medical Device Amendments of 1976 ("MDA") applies to Octapharma's donor management software system ("DMS") and plasmapheresis device ("PCS") and expressly preempts BIPA. (Dkt. 45 at 9–11). The MDA includes an express preemption provision that states:

> No State . . . may establish or continue in effect **with respect to a device** intended for human use any requirement: (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a) (emphasis added). While the MDA regulates medical devices, BIPA regulates "private entit[ies] in possession of biometric identifiers or biometric information", in this instance, Octapharma. 740 ILCS 14/15. BIPA imposes no requirements upon Octapharma's DMS or PCS, only upon Octapharma itself. Moreover, BIPA's requirements are only triggered by the collection of biometric identifiers, which the MDA does not mandate. Express preemption is inapplicable.

2.    *Conflict Preemption*

To establish conflict preemption, Octapharma "must show either that it would be 'impossible' . . . to comply with both state and federal law or that state law . . . constitutes an 'obstacle' to satisfying the purpose and objectives of Congress." *C.Y. Wholesale, Inc.*, 965 F.3d at 546 (quoting *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 650 (7th Cir. 2019)).   Octapharma bears the burden of demonstrating that applying BIPA would do "'major damage' to clear and substantial federal interests." *Id.* (citing *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1049 (7th Cir. 2013)).   Absent "the clear and manifest purpose of Congress," courts should not find conflict preemption. *Id.* (quoting *Arizona v. U.S.*, 567 U.S. 387, 400 (2012)).

Octapharma points to no federal statute or regulation incompatible with simultaneous compliance with BIPA.   BIPA applies only when an entity collects biometric information; the FDCA does not require Octapharma to collect or use biometric information.   *See, e.g., Marsh and Hilson v. CSL Plasma, Inc.*, No. 19 C 6700, 2020 WL 7027720, at *5 (N.D. Ill. Nov. 30, 2020).   Although the FDCA does require screening procedures for identity, it does not prescribe an exclusive or preferred method. 80 Fed. Reg. 29, 869 (May 22, 2015) ("[W]e have not specified the means of establishing proof.   We believe that photographic identification, a valid driver's license, valid biometric means, or other means can be useful in establishing the donor's identity.").   Octapharma's decision to use biometric information, or assessment that such a method is superior to the alternatives, does not alter the fact that it is not required by federal law. (Dkt. 45 at 12)   Octapharma may satisfy both

federal law and BIPA by using an alternate method of proving donor identity. Conflict preemption, then, does not apply.

### 3.  *Field Preemption*

"Field preemption is rare." *Nelson*, 928 F.3d at 651. Field preemption occurs "when federal law occupies a 'field' of regulation 'so comprehensively that it has left no room for supplementary state legislation." *Id.* at 651–52 (quoting *Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 498 (7th Cir. 2018)). The FDA "did not intend its regulation to be exclusive" in the plasma-donation industry. *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 714 (1985) (citing 38 Fed. Reg. 19365 (1973) ("These regulations are not intended to usurp the power of State or local authorities to regulate plasmapheresis procedures in their localities.")). The FDA's statement is "dispositive on the question of implicit intent to pre-empt unless either the agency's position is inconsistent with clearly expressed congressional intent . . . or subsequent developments reveal a change in that position." *Id.* at 714–15. Octapharma's cursory reference to the FDA's health and safety-based goals and observation that BIPA is "wholly distinct from plasmapheresis regulation" falls short of altering the scope of the FDCA as expressed by the FDA. (Dkt. 45 at 7–8; 11–12). Octapharma has not demonstrated that Congress occupied the entire field of either the plasma donation industry or biometric privacy such that BIPA is preempted. Field preemption is inapplicable.

Crumpton's motion to strike Octapharma's First Affirmative Defense is granted with prejudice.

**C.    Second Affirmative Defense: Octapharma is Excepted from BIPA**

Octapharma's Second Affirmative Defense is that it is excepted from BIPA because its records are subject to HIPAA, the biometric identifiers are collected in a "health care setting" and "collected, used, or stored for health care treatment", and are used to "validate scientific testing or screening". (Dkt. 16 at 31–32 ¶¶ 57–60; Dkt. 45 at 13–16).

*1.    Subject to HIPAA*

Under BIPA, biometric identifiers do not include "information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996." 740 ILCS 14/10. Octapharma argues that, because it is a licensed clinical laboratory under the Clinical Laboratory Improvements Act ("CLIA") and Illinois's Laboratory and Blood Bank Act ("Illinois Laboratory Act"), it "may be required to disclose its laboratory testing results of a donor subject to HIPAA." (Dkt. 45 at 15–16). At the outset, Crumpton seeks to judicially estop Octapharma from forwarding this argument. (Dkt. 43 at 10). Judicial estoppel is a common-law doctrine that prohibits a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). The doctrine makes litigants "'choose one position irrevocably,'" thereby "'rais[ing] the cost of lying.'" *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006) (quoting *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1428 (7th Cir. 1993)). Courts invoke the doctrine at their discretion, and the "circumstances under which [it] may be invoked

are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 749. Courts generally assess three factors to determine whether applying judicial estoppel is appropriate. First, the party's later position must be "clearly inconsistent" with its previous position. *Id*. at 750. Second, courts consider whether the party succeeded in persuading a court to accept its earlier position, "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was mislead.'" *Id*. (quoting *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 565 (6th Cir. 1982)). Third, courts consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id*.

Octapharma's current position with respect to the applicability of HIPAA regulations is not "clearly inconsistent" with positions adopted in other cases. Octapharma's argument is distinct from its position on motion to dismiss in *Levorsen v. Octapharma Plasma, Inc.*, an action under Title III of the Americans with Disabilities Act ("ADA") in which Octapharma contested whether it was a "place of public accommodation" under the ADA. No. 2:12-cv-325, Dkt. 10 at 3. In *Levorsen*, Octapharma argued it was not a "professional office of a health care provider" under the ADA because "plasma donation centers do not provide 'health care services' and its donors are not 'patients.'" *Id.*, Dkt. 10 at 8. The "plasma donation centers are exempt from HIPAA requirements" language Crumpton identifies is plucked from a parenthetical in service of this point about Octapharma's status as a health care

provider. *Id.*, Dkt. 10 at 8. Octapharma is not estopped from making its HIPAA argument.

Octapharma's Second Affirmative Defense inadequately pleads a connection between collecting a biometric template from donors on the front end and how that template is "collected, used, or stored for health care treatment, payment, or operations under [HIPAA]." 740 ILCS 14/10. Octapharma's claim that it is subject to the CLIA and the Illinois Laboratory Act which are, in turn, subject to HIPAA does not elucidate the matter. (Dkt. 16 at 31 ¶ 60). First, it is unclear that the Illinois Laboratory Act is subject to HIPAA. Other than borrowing a few definitions from HIPAA, the Illinois Laboratory Act merely provides that "laboratory test results ***may*** be reported or transmitted to: . . . (3) an electronic health information exchange for the purposes of transmitting, using, or disclosing clinical laboratory test results in any manner required or permitted by HIPAA." 210 ILCS 25/7-102(a)(3) (emphasis added); *see also* 210 ILCS 25/2-134–37. This provision is permissive, not compulsory. Second, Octapharma does not explain how the fact that its compliance under CLIA with respect to its records extends to biometric templates collected from donors for identification. (Dkt. 43 at 15–16). With respect to Octapharma's argument that it is subject to HIPAA and thus exempt from BIPA, Crumpton's motion to strike the Second Affirmative Defense is granted without prejudice.

2. *"Patient" in a "Health Care Setting"*

BIPA does not apply to "information captured from a patient in a health care setting." 740 ILCS 14/10. Crumpton seeks to estop Octapharma from arguing the

biometric identifiers it collects fall within this exception because they are collected along with medical information provided by a donor. (Dkt. 43 at 11–12; Dkt. 45 at 13). Here, Octapharma makes an argument regarding the scope of BIPA's statutory text. This position is not inconsistent with Octapharma's arguments in either *Levorsen* or *Maley v. Octapharma Plasma, Inc.*, another case arising under the ADA in which Octapharma argued it was not a place of public accommodation. *See* No. 12-13892, Dkt. 6 at 8–9. In both *Levorsen* and *Maley*, Octapharma argued it was not a health care provider under the ADA. *See Levorsen*, No. 2:12-cv-325, Dkt. 10 at 8 ("[A] plasma collection center is not a 'health care provider' as a matter of ***federal law***.") (emphasis added); *Maley*, No. 12-13892, Dkt. 6 at 11. Crumpton has not identified any position regarding the scope of the BIPA exception, which Octapharma contends does not track HIPAA's Privacy Rule definitions, which justify judicial estoppel. (Dkt. 45 at 13–14).

The crux of this argument is twofold: donors are "patients" and Octapharma collects the fingerprint templates "in a health care setting." Leaving aside the ultimate merit of the argument, Octapharma plead sufficient facts to survive a motion to strike. BIPA does not define the term "patient" and Crumpton does not offer a definition, relying instead upon the semantic distinction between donors and patients in the Answer. (Dkt. 16 at 15 ¶ 1, 16 ¶ 6, 22 ¶ 12). Absent guidance from the Illinois legislature or the briefing, the common definition of the term "patient" controls: An "individual awaiting or under medical care and treatment" or "the recipient of any of various personal services." Merriam Webster, "Patient",

https://merriam-webster.com/dictionary/patient (last visited January 4, 2020). Octapharma alleges it assesses the donor's "health vitals and characteristic," conducts initial and annual "head-to-toe physical examination[s]," provides counseling "for vital results that are repeatedly out-of-limit," and, when appropriate, "provides documentation, including copies of [] test results, so that the donor can take the information to their physician." (Dkt. 45-1 ¶¶ 14, 37, 39, 47, 70). Crumpton has not demonstrated beyond a reasonable doubt that Octapharma can prove no set of facts indicating donors are also patients under BIPA. *See, e.g., Mittelstaedt*, No. 12 C 5131, 2012 WL 6188548, at *2.

Neither does BIPA define the term "health care." The disjunctive "or" separating the "health care setting" and "information collected, used, or stored for health care treatment" clauses of the exception render the HIPAA Privacy Rule definitions uninstructive. 740 ILCS 14/10. For want of other guidance, the common meaning of "health care" as "efforts made to maintain or restore physical, mental, or emotional well-being especially by trained and licensed professionals[]" applies. Merriam Webster, "Health Care", https://merriam-webster.com/dictioanry/health-care (last visited January 4, 2020). From this definition, it is not clear that the donor must be the beneficiary of such efforts for the donation to take place in a "health care setting." Octapharma alleges the fingerprint templates are collected along with the donor's medical information, including their personal health history and health-affecting conduct. (Dkt. 45-1 ¶¶ 14–15, 24–28). A medical screener takes the donor's vials and, if the results are "repeatedly out-of-limits", a physician substitute counsels

the donor. (Dkt. 45-1 ¶ 39). Donors also receive a "head-to-toe physical examination" by a Medical Director of physician substitute. (Dkt. 45-1 at 42, 47–48). Finally, the donor's blood and plasma are tested for "relevant transfusion-transmitted infections" and, should a test yield a positive result, Octapharma contacts the donor, requests the donor return to the facility where they are counseled by a Medical Director or physician substitute and provided documentation, "including copies of the test results, so that the donor can take the information to their physician." (Dkt. 45-1 ¶¶ 67–70). These allegations are sufficient to survive a motion to strike. With respect to Octapharma's argument the biometric identifiers are "captured from a patient in a health care setting," Crumpton's motion to strike is denied.

### 3. *"Validates Scientific Testing or Screening"*

Under BIPA, biometric identifiers do not include:

> [A]n X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or file of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

740 ILCS 14/10. Octapharma argues the fingerprint templates fall under this exception because they are "collected to validate the donor's identity for the medical screening and the 'scientific testing' of their blood and plasma" and serves to "'further validate' those processes and donor's test results." (Dkt. 45 at 16). Ultimately, Octapharma's allegations amount to the biometric templates are used to "ensure the positive identification of [] donors" and associate donors with their medical records. (Dkt. 45-1 ¶¶ 17–19). Octapharma does not allege the biometric identifiers themselves are integral to screening or testing the donor or their plasma or blood for

any condition or disease. Moreover, validating donor identity is not the same as validating the underlying testing or screening.

With respect to Octapharma's argument that the fingerprint templates are used to validate medical screening and scientific testing and thus exempt from BIPA, Crumpton's motion to strike the Second Affirmative Defense is granted without prejudice.

## CONCLUSION

For the foregoing reasons, Crumpton's Motion to Strike Defendant's First and Second Affirmative Defenses is granted in part and denied in part. (Dkt. 43). Octapharma's First Affirmative Defense, as well as its arguments within the Second Affirmative Defense that it is subject to HIPAA and that the biometric templates are used to validate medical screening and scientific testing, are stricken. To the extent Octapharma argues within the Second Affirmative Defense the biometric templates are obtained from patients in a health care setting, Crumpton's Motion to Strike Defendant's First and Second Affirmative Defense is denied.

The Court grants Octapharma leave to amend its Answer consistent with this Opinion, if possible, within 21 days of the filing of this Opinion.

Virginia M. Kendall
United States District Judge

Date: January 19, 2021