IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MARY CRUMPTON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>OCTAPHARMA PLASMA, INC., a Delaware corporation,<br><br>*Defendant*. | Case No. 1:19-cv-08402<br><br>Hon. Virginia M. Kendall |

**FIRST AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Mary Crumpton brings this First Amended Class Action Complaint and Demand for Jury Trial against Defendant Octapharma Plasma, Inc. ("Octapharma") to put a stop to its unlawful collection, use, storage, and disclosure of Plaintiff's and the putative Class members' sensitive biometric data. Plaintiff, for her First Amended Class Action Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief.

## NATURE OF THE ACTION

1. Defendant Octapharma operates a nationwide chain of blood plasma donation centers with locations throughout the State of Illinois, including in Cook County.

2. When consumers donate plasma at Octapharma, they are required to scan their fingerprints and enroll in Octapharma's customer membership database.

3. While most membership management programs use conventional methods for verifying customers (like identification cards), Octapharma's customers are required to have their fingerprints scanned.

4. Unlike identification cards—which can be changed or replaced if stolen or compromised—fingerprints are unique, permanent biometric identifiers associated with a consumer. This exposes consumers to serious and irreversible privacy risks. For example, if a fingerprint database is hacked, breached, or otherwise exposed, consumers have no means by which to prevent identity theft and unauthorized tracking.

5. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"), specifically to regulate companies that collect, store, and disseminate Illinois citizens' biometrics, such as fingerprints.

6. Despite this law, Octapharma disregards its customers' statutorily protected privacy rights and unlawfully collects, stores, uses, and discloses their biometric data in violation of the BIPA. Specifically, Octapharma has violated the BIPA because it did not:

- Properly inform Plaintiff and the Class members in writing of the specific purpose and length of time for which their fingerprints were being collected, stored, and used, as required by the BIPA;

- Establish or comply with a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and the Class's fingerprints, as required by the BIPA;

- Receive a written release from Plaintiff or the members of the Class to collect, capture, or otherwise obtain fingerprints, as required by the BIPA; nor

- Receive consent from Plaintiff and the Class members to disclose their biometric data.

7. Indeed, not only did Octapharma collect and store its customers biometric data in violation of BIPA, it also unlawfully disclosed their biometric data to a third party: Haemonetics Corporation ("Haemonetics"), the vendor of the software running on Octapharma's finger scanning terminals.

8. Accordingly, this Complaint seeks an order: (i) declaring that Defendant's conduct violates the BIPA; (ii) requiring Defendant to cease the unlawful activities discussed herein; and (iii) awarding liquidated damages to Plaintiff and the proposed Class.

## PARTIES

9. Plaintiff Mary Crumpton is a natural person and citizen of the State of Illinois.

10. Defendant Octapharma is a corporation existing under the laws of the State of Delaware with its headquarters located at 10644 Westlake Drive, Charlotte, North Carolina 28273. Octapharma has also been registered to conduct business in Illinois with the Illinois Secretary of State since July 6, 2009 (as File No. 66649199).

## JURISDICTION AND VENUE

11. This matter was removed from the Circuit Court of Cook County, Illinois. (*See* dkt. 1.)

12. The removing defendant, Octapharma Plasma, Inc., asserted that jurisdiction was proper under 28 U.S.C. § 1332. (*See id.*)

## FACTUAL BACKGROUND

**I.    The Biometric Information Privacy Act.**

13. In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new [consumer] applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS 14/5(b). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing, yet unregulated technology. *See* 740 ILCS 14/5.

14. In late 2007, a biometrics company called Pay By Touch—which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer

3

transactions—filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly there was a serious risk that millions of fingerprint records—which, are unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who had used that company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that unique biometric identifiers could now be sold to unknown third parties.

15. Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted the BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS 14/5.

16. The BIPA is an informed consent statute which achieves its goal by making it unlawful for a company to, among other things, "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it *first*:

> (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information."

740 ILCS 14/15(b).

17. Biometric identifiers include retina and iris scans, voiceprints, scans of hand and

4

face geometry, and—most importantly here—fingerprints. *See* 740 ILCS 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *See id.*

18. The BIPA also establishes standards for how companies must handle Illinois consumers' biometric identifiers and biometric information. *See*, *e.g.*, 740 ILCS 14/15(a), (c)–(d). For instance, the BIPA requires companies to develop and comply with a written policy—made available to the public—establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS 14/15(a).

19. The BIPA also prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information to third parties absent consent for that disclosure (or certain other exceptions not applicable here). *See* 740 ILCS 14/15(d)(1).

20. The BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information. 740 ILCS 14/15(c).

21. Ultimately, the BIPA is simply an informed consent statute. Its narrowly tailored provisions place no absolute bar on the collection, sending, transmitting or communicating of biometric data. The BIPA simply mandates that entities wishing to engage in that conduct must make proper disclosures and implement certain reasonable safeguards.

**II. Octapharma Violates the Biometric Information Privacy Act.**

22. By the time the BIPA passed through the Illinois Legislature in mid-2008, many companies who had experimented with using biometric data as an authentication method stopped doing so, at least for a time. That is because Pay By Touch's bankruptcy, described in Section I

above, was widely publicized and brought attention to consumers' discomfort with the use of their biometric data.

23. Unfortunately, Octapharma failed to address these concerns. Octapharma collected, stored, used, and disclosed its customers' biometric data in violation of the BIPA.

24. Specifically, when customers first donate plasma at Octapharma, they are required to have their fingerprints scanned in order to enroll them in Octapharma's fingerprint database.

25. Octapharma uses a customer management system that requires customers to use their fingerprints to authenticate and verify their identity.

26. Octapharma failed to adequately inform its customers of the complete purposes for which it collects their sensitive biometric data or to whom the data is disclosed.

27. Up until after this lawsuit was filed, Octapharma similarly failed to establish a written, publicly available policy identifying its retention schedule for its customers' biometric data, and guidelines for permanently destroying their fingerprints when the initial purpose for collecting or obtaining their fingerprints is no longer relevant, as required by the BIPA. A customer who donated plasma at Octapharma did so without any knowledge of when their biometric identifiers would be removed from Octapharma's database—or if they ever will be.

28. Finally, Octapharma disclosed its customers' biometric data to Haemonetics, the provider of the software that runs on Octapharma's finger scanning terminals. That is, up until at least July 30, 2019, when a customer first scanned their fingerprints into one of Octapharma's finger scanning terminals, the template that is created from the customer's fingerprint was transmitted to a server owned by Haemonetics, where it was held along with the customer's other donor-related personal information.

29. The Pay By Touch bankruptcy that catalyzed the passage of the BIPA highlights

why conduct such as Octapharma's—whose customers are aware that they are providing biometric identifiers but are not aware of to whom or the full extent of the reasons they are doing so—is so dangerous. That bankruptcy spurred Illinois citizens and legislators to realize a critical point: it is crucial for people to understand when providing biometric data who exactly is collecting it, who it will be transmitted to, for what purposes, and for how long. But Octapharma disregards these obligations, and instead unlawfully collected, stored, possessed, used, and disclosed its customers' biometric identifiers and information without proper consent.

30. Ultimately, Octapharma disregarded its customers' statutorily protected privacy rights by violating the BIPA.

## FACTS SPECIFIC TO PLAINTIFF CRUMPTON

31. Plaintiff Crumpton donated plasma at Octapharma between June 2017 and August 2018.

32. Octapharma required Plaintiff Crumpton to scan her fingerprint so that it could enroll her in its membership database. Octapharma stored Plaintiff Crumpton's fingerprint data in its database.

33. Each time Plaintiff Crumpton donated plasma, she was required to scan her fingerprint.

34. Octapharma never informed Plaintiff of the specific limited purposes or length of time for which it collected, stored, or used her fingerprint.

35. Similarly, Octapharma never informed Plaintiff Crumpton of any biometric data retention policy it developed, nor whether it will ever permanently delete her fingerprint.

36. Plaintiff Crumpton never signed a written release allowing Octapharma to collect or store her fingerprint.

37. Octapharma transmitted Plaintiff Crumpton's biometric data to Haemonetics to be stored on Haemonetics' server without ever obtaining Plaintiff Crumpton's consent for such disclosure.

38. Plaintiff Crumpton has continuously and repeatedly been exposed to the risks and harmful conditions created by Octapharma's violations of the BIPA alleged herein.

39. Plaintiff Crumpton now seeks liquidated damages under BIPA as compensation for the injuries Octapharma has caused.

## CLASS ALLEGATIONS

**Class Definition**: Plaintiff Mary Crumpton brings this action pursuant to 735 ILCS 5/2-801 on behalf of herself and a Class of similarly situated individuals, defined as follows:

> All residents of the State of Illinois who had their fingerprints collected, captured, received, otherwise obtained, or disclosed by Octapharma while residing in Illinois.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

40. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but it is clear that individual joinder is impracticable. Defendant has collected, captured, received, or otherwise obtained biometric identifiers or biometric information from at least hundreds of individuals who fall into the definition of the Class. Ultimately, the Class members will be easily identified through Defendant's records.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

   a) whether Defendant collected, captured, or otherwise obtained Plaintiff's and the Class's biometric identifiers or biometric information;

   b) whether Defendant properly informed Plaintiff and the Class of its purposes for collecting, using, and storing their biometric identifiers or biometric information;

   c) whether Defendant obtained a written release (as defined in 740 ILCS 14/10) to collect, use, and store Plaintiff's and the Class's biometric identifiers or biometric information;

   d) whether Defendant has disclosed or re-disclosed Plaintiff's and the Class's biometric identifiers or biometric information to any third parties;

   e) whether Defendant has sold, leased, traded, or otherwise profited from Plaintiff's and the Class's biometric identifiers or biometric information;

   f) whether Defendant developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of their last interaction, whichever occurs first;

   g) whether Defendant complied with any such written policy (if one existed);

   h) whether Defendant used Plaintiff's and the Class's fingerprints to identify them;

   i) whether the violations of the BIPA were committed negligently; and

   j) whether the violations of the BIPA were committed willfully.

42. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class,

9

and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

43. **Superiority**: This class action is appropriate for certification because class proceedings are superior to all others available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class are likely to have been small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

**FIRST CAUSE OF ACTION**
**Violation of 740 ILCS 14/15(a)**
**(On Behalf of Plaintiff and the Class)**

44. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

45. The BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention (and—importantly—deletion) policy. Specifically, those companies must: (i) develop a written policy establishing a retention schedule

and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the consumer); (ii) make the policy available to the public; and (iii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS 14/15(a).

46. Unfortunately, Octapharma failed to comply with these BIPA mandates.

47. Octapharma is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

48. Plaintiff and the Class are individuals who had their "biometric identifiers" collected and possessed by Octapharma (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10. Octapharma also collected and possessed information based on Plaintiff's and the Class's fingerprints used to identify them, which is "biometric information." *Id.*

49. Despite collecting and possessing Plaintiff's and the Class's biometric identifiers and biometric information, Octapharma failed to develop, make publicly available, and comply with a retention schedule or guidelines for permanently destroying its customers' biometric identifiers and biometric information, in violation of 740 ILCS 14/15(a).

50. By collecting, possessing, storing, using, and failing to timely delete Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Octapharma violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

51. On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Octapharma to comply with the BIPA's requirements for the possession and deletion of

11

biometric identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each of Octapharma's willful and/or reckless violations of 740 ILCS 14/15(a) pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of 740 ILCS 14/15(a) pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**SECOND CAUSE OF ACTION**
**Violation of 740 ILCS 14/15(b)**
**(On Behalf of Plaintiff and the Class)**

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein

53.     The BIPA requires companies to obtain informed written consent from consumers before acquiring their biometric data. Specifically, the BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless [the entity] first: (1) informs the subject . . . in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject . . . in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; *and* (3) receives a written release executed by the subject of the biometric identifier or biometric information . . . ." 740 ILCS 14/15(b) (emphasis added).

54.     Unfortunately, Octapharma failed to comply with these BIPA mandates.

55.     Octapharma is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

56.     Plaintiff and the Class are individuals who had their "biometric identifiers" collected by Octapharma (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10. Octapharma also collected and possessed information based on Plaintiff's

12

and the Class's fingerprints used to identify them, which is "biometric information." *Id.*

57. Octapharma violated 740 ILCS 14/15(b)(3) by failing to obtain written releases from Plaintiff and the Class before it collected, used, and stored their biometric identifiers and biometric information.

58. Octapharma violated 740 ILCS 14/15(b)(1) by failing to inform Plaintiff and the Class in writing that their biometric identifiers and biometric information were being collected and stored.

59. Octapharma violated 740 ILCS 14/15(b)(2) by failing to inform Plaintiff and the Class in writing of the specific purpose and length of term for which their biometric identifiers or biometric information were being collected, stored, and used.

60. By collecting, storing, and using Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Octapharma violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq.*

61. On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Octapharma to comply with the BIPA's requirements for the collection, storage, and use of biometric identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each willful and/or reckless violation of 740 ILCS 14/15(b) pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of 740 ILCS 14/15(b) pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**THIRD CAUSE OF ACTION**
**Violation of 740 ILCS 14/15(d)**
**(On Behalf of Plaintiff and the Class)**

62. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63. The BIPA requires companies in possession of biometric data to obtain consent from consumers before disclosing their biometric data to a third party. Specifically, the BIPA makes it unlawful for any private entity to "disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless . . . the subject of the biometric identifier or biometric information . . . consents to the disclosure or redisclosure." 740 ILCS 14/15(d)(1).

64. Unfortunately, Octapharma failed to comply with this BIPA mandate.

65. Octapharma is a corporation and thus qualifies as a "private entity" under the BIPA. *See* 740 ILCS 14/10.

66. Plaintiff and the Class are individuals who had their "biometric identifiers" collected and possessed by Octapharma (in the form of their fingerprints), as explained in detail in Section II. *See* 740 ILCS 14/10. Octapharma also collected and possessed information based on Plaintiff's and the Class's fingerprints used to identify them, which is "biometric information." *Id.*

67. Octapharma violated 740 ILCS 14/15(d) by disclosing Plaintiff's and the Class's biometric identifiers and/or biometric information to a third party, Haemonetics, to be stored on its servers, without obtaining Plaintiff's and the Class's consent for such disclosure.

68. Octapharma's disclosure of Plaintiff's and the Class's biometric identifiers and/or biometric information to Haemonetics was not made to complete any financial transaction, was not required by any State or federal law or municipal ordinance, and was not required pursuant to any valid warrant or subpoena.

14

69. By collecting, possessing, and disclosing Plaintiff's and the Class's biometric identifiers and biometric information as described herein, Octapharma violated Plaintiff's and the Class's rights to privacy in their biometric identifiers or biometric information as set forth in the BIPA, 740 ILCS 14/1, *et seq*.

70. On behalf of herself and the Class, Plaintiff seeks: (1) injunctive and equitable relief as is necessary to protect the interests of the Plaintiff and the Class by requiring Octapharma to comply with the BIPA's requirements for the possession and disclosure of biometric identifiers and biometric information as described herein; (2) liquidated damages of $5,000 for each of Octapharma's willful and/or reckless violations of 740 ILCS 14/15(d) pursuant to 740 ILCS 14/20(2) or, in the alternative, liquidated damages of $1,000 for each negligent violation of 740 ILCS 14/15(d) pursuant to 740 ILCS 14/20(1); and (3) reasonable attorneys' fees and costs and expenses pursuant to 740 ILCS 14/20(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mary Crumpton, on behalf of herself and the Class, respectfully request that the Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Crumpton as representative of the Class, and appointing her counsel as Class Counsel;

B. Declaring that Defendant's actions, as set out above, violate the BIPA;

C. Awarding statutory damages of $5,000 for *each* willful and/or reckless violation of BIPA pursuant to 740 ILCS 14/20(2) or, in the alternative, statutory damages of $1,000 for *each* negligent violation of BIPA pursuant to 740 ILCS 14/20(1);

D. Awarding injunctive and other equitable relief as is necessary to protect the

15

interests of the Class, including an Order requiring Defendant to collect, possess, store, use, and disclose biometric identifiers or biometric information in compliance with the BIPA;

  E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

  F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

  G. Awarding such other and further relief as equity and justice may require.

## JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

          Respectfully submitted,

          **MARY CRUMPTON**, individually and on behalf of all others similarly situated,

Dated: February 5, 2021    By: /s/ Schuyler Ufkes
            One of Plaintiff's Attorneys

          Benjamin H. Richman
          brichman@edelson.com
          J. Eli Wade-Scott
          ewadescott@edelson.com
          Schuyler Ufkes
          sufkes@edelson.com
          EDELSON PC
          350 North LaSalle Street, 14th Floor
          Chicago, Illinois 60654
          Tel: 312.589.6370
          Fax: 312.589.6378

          David Fish
          dfish@fishlawfirm.com
          John Kunze
          jkunze@fishlawfirm.com
          THE FISH LAW FIRM, P.C.
          200 East Fifth Avenue, Suite 123
          Naperville, Illinois 60563
          Tel: 630.355.7590

Fax: 630.778.0400