# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| MARY CRUMPTON, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | No. 19-cv-08402 |
| v. | Hon. Virginia M. Kendall |
| OCTAPHARMA PLASMA, INC., a Delaware corporation, | |
| *Defendant.* | |

## STIPULATION OF CLASS ACTION SETTLEMENT

This Class Action Settlement Agreement ("Settlement Agreement") is entered into by and among Plaintiff Mary Crumpton ("Crumpton" or "Plaintiff"), for herself individually and on behalf of the Settlement Class, and Defendant Octapharma Plasma, Inc. ("Octapharma" or "Defendant") (Plaintiff and Defendant are referred to individually as "Party" and collectively referred to as the "Parties"). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the following terms and conditions, and subject to the approval of the Court.

## RECITALS

A.     On December 2, 2019, Plaintiff Mary Crumpton filed a putative class action complaint against Octapharma Plasma, Inc. in the Circuit Court of Cook County, Illinois, alleging violations of the Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA"). Plaintiff claimed that Octapharma collected and stored her biometric data without authorization through the use of a finger-scanning device at an Octapharma plasma donation facility in Illinois.

1

B.      On December 23, 2019, Defendant removed the case to the United States District Court for the Northern District of Illinois, pursuant to the Class Action Fairness Act ("CAFA"), where it was assigned the caption *Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402 (N.D. Ill.). (*See* dkt. 1.)

C.      On February 3, 2020, Defendant answered Plaintiff's complaint, denying liability and asserting twelve affirmative defenses. (Dkt. 16.)

D.      Thereafter, the Parties exchanged initial disclosures pursuant to the Mandatory Initial Discovery Pilot ("MIDP") program, with Plaintiff serving her disclosures on March 3, 2020 and Defendant serving its disclosures on June 8, 2020 and a supplement to its initial disclosures on June 18, 2021.

E.      On June 18, 2020, Plaintiff moved to strike Defendant's first and second affirmative defenses, including that BIPA is preempted by federal law and that Defendant is exempt from BIPA because (i) its facilities must comply with the Clinical Laboratory Improvement Act, under which certain of its records-keeping obligations are subject to HIPAA, (ii) the biometric data it collected was from "patient[s] in a health care setting," and (iii) the biometric data was used to "further validate scientific testing or screening." (Dkt. 43.)

F.      After the Parties fully briefed the motion, on January 19, 2021, the Court granted Plaintiff's motion in part, striking Defendant's first affirmative defense (federal preemption) with prejudice, and striking parts of its second affirmative defense (related to HIPAA and validating scientific testing or screening) without prejudice. (Dkt. 58.) The Court denied Plaintiff's motion with respect to Defendant's "patient in a health care setting" defense. (*Id.*)

G.      On February 5, 2021, Plaintiff filed an amended complaint, adding a claim against Defendant under Section 15(d) of BIPA for the disclosure of her biometric data to a third party,

Haemonetics Corporation, without her consent. (Dkt. 65.) On February 26, 2021, Defendant answered Plaintiff's amended complaint, denying liability and again asserting several affirmative defenses.

H.      The Parties engaged in significant written and oral fact discovery throughout the case. On June 15, 2020, Plaintiff served her first set of written discovery requests, including interrogatories and requests for production, on Defendant, to which Defendant initially responded and produced documents on August 27, 2020. Defendant thereafter made eight supplemental document productions between October 22, 2020 and July 12, 2021.

I.      On August 7, 2020, Defendant served its first set of interrogatories and requests for production on Plaintiff, which Defendant amended on September 4, 2020. Plaintiff initially responded on September 8, 2020, and responded to Defendant's amended requests on October 9, 2020.

J.      Plaintiff served third party subpoenas for documents to Haemonetics Corporation and Fulcrum Biometrics, Inc.—two providers of the relevant software involved in the finger scanning devices at issue—on September 7, 2020 and January 22, 2021, respectively. Haemonetics Corporation responded to Plaintiff's subpoena and produced documents on September 22, 2020, and provided a supplemental production on December 3, 2020. Fulcrum Biometrics responded to Plaintiff's subpoena and produced documents on February 23, 2021.

K.      On March 21, 2021, Plaintiff served her second set of written discovery requests to Defendant, to which Defendant responded on May 11, 2021. The Parties updated and supplemented previous discovery responses numerous times.

L.      On June 8, 2021, Defendant deposed Plaintiff Mary Crumpton, and on June 23, 2021, Plaintiff deposed one of Defendant's Rule 30(b)(6) representatives.

M.     Plaintiff also noticed the depositions of two Octapharma employees and served a subpoena for the deposition of Haemonetics Corporation, which was scheduled to take place on September 14, 2021.

N.     Meanwhile, following the Court's January 19, 2021 ruling on Plaintiff's motion to strike (dkt. 58), the Parties began to explore the possibility of a class-wide settlement. On June 2, 2021, Plaintiff served her initial settlement demand to Defendant. After several telephone conferences between counsel for the Parties, the Parties agreed to mediate. On August 26, 2021, the Parties participated in a full-day, formal mediation session with the Honorable James F. Holderman (Ret.) of JAMS in Chicago.[1] The Parties' settlement negotiations lasted throughout the day, with the Parties ultimately fully executing a binding Memorandum of Understanding at the end of the session that evening.

O.     Plaintiff and Class Counsel conducted a comprehensive examination of the law and facts relating to the allegations in the Action and Defendant's potential defenses. Plaintiff believes that the claims asserted in the Action have merit, that she would have ultimately succeeded in obtaining adversarial certification of the proposed Settlement Class, and that she would have prevailed on the merits at summary judgment or at trial. However, Plaintiff and Class Counsel recognize that Defendant has raised factual and legal defenses in the Action that presented a significant risk that Plaintiff may not prevail and/or that a class might not be certified for trial. Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as difficulty and delay inherent in such litigation. Plaintiff and Class Counsel believe that this Agreement presents an exceptional result for the Settlement Class, and one that will be provided to the Settlement Class without delay.

---

[1]     Due to COVID-19, the mediation session was conducted via videoconference.

Plaintiff and Class Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, adequate, and based on good faith negotiations, and in the best interests of Plaintiff and the Settlement Class. Therefore, Plaintiff believes that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and forever barred pursuant to the terms and conditions set forth in the Settlement Agreement.

   P.  Defendant denies the material allegations in the Action, as well as all allegations of wrongdoing and liability, including that it is subject to or violated BIPA, and believes that it would have prevailed on the merits and that a class would not be certified for trial. Nevertheless, Defendant has similarly concluded that this settlement is desirable to avoid the time, risk, and expense of defending protracted litigation, and to avoid the risk posed by the Settlement Class's claims for statutory damages under BIPA. Defendant thus desires to resolve finally and completely the pending and potential claims of Plaintiff and the Settlement Class.

   NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff, the Settlement Class, and Defendant that, subject to the approval of the Court after a hearing as provided for in this Settlement Agreement, and in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Settlement Agreement.

## **AGREEMENT**

## 1. DEFINITIONS

   In addition to any definitions set forth elsewhere in this Settlement Agreement, the following terms shall have the meanings set forth below:

1.1     "**Action**" means the case captioned *Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402 (N.D. Ill.).

1.2     "**Agreement**" or "**Settlement Agreement**" means this Stipulation of Class Action Settlement and the attached Exhibits.

1.3     "**Approved Claim**" means a Claim Form submitted by a Settlement Class Member that is (a) timely and submitted in accordance with the directions on the Claim Form and the terms of this Agreement, (b) is fully completed and physically or electronically signed by the Settlement Class Member, and (c) satisfies the conditions of eligibility for a Settlement Payment as set forth in this Agreement.

1.4     "**Claims Deadline**" means the date by which all Claim Forms must be postmarked or submitted on the Settlement Website to be considered timely, and shall be set as a date no later than sixty-three (63) days following the Notice Date, subject to Court approval. The Claims Deadline shall be clearly set forth in the order preliminarily approving the Settlement, as well as in the Notice and the Claim Form.

1.5     "**Claim Form**" means the document substantially in the form attached hereto as Exhibit A, as approved by the Court. The Claim Form, which shall be completed by Settlement Class Members who wish to file a claim for a Settlement Payment, shall be available in paper and electronic format. The Claim Form will require claiming Settlement Class Members to provide the following information: (i) full name, (ii) current U.S. Mail address, (iii) current contact telephone number and email address, and (iv) a statement that he or she scanned their finger and provided an Illinois address at an Octapharma plasma donation facility located in Illinois between December 2, 2014 and February 4, 2020. The Claim Form will not require notarization, but will require affirmation that the information supplied is true and correct. The

online Claim Form will provide Class Members with the option of having their Settlement Payment transmitted to them electronically through Venmo, Zelle, Paypal, Prepaid Mastercard, ACH Direct Deposit, or check. Class Members who submit a paper Claim Form that is approved will be sent a check via U.S. Mail.

1.6     "**Class Counsel**" means attorneys Jay Edelson, J. Eli Wade-Scott, and Schuyler Ufkes of Edelson PC and David Fish of Fish Potter Bolaños, P.C.

1.7     "**Class Representative**" or "**Plaintiff**" means the named Plaintiff in the Action, Mary Crumpton.

1.8     "**Court**" means the United States District Court for the Northern District of Illinois, Eastern Division, the Honorable Virginia M. Kendall presiding, or any judge who shall succeed her as the Judge assigned to the Action.

1.9     "**Defendant**" or "**Octapharma**" means Octapharma Plasma, Inc., a Delaware corporation.

1.10    "**Defendant's Counsel**" **or "Octapharma's Counsel**" means attorneys Daniel T. Graham, Timothy R. Herman, and Jeffrey M. Sniadanko of Clark Hill PLC.

1.11    "**Effective Date**" means one business day following the later of: (i) the date upon which the time expires for filing or noticing any appeal of the Final Approval Order; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award or incentive award, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order without any material modification, of all proceedings arising out of the appeal(s) (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal(s) following decisions on remand); or

(iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari with respect to the Final Approval Order.

1.12    "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to Class Counsel and Defendant at a depository institution insured by the Federal Deposit Insurance Corporation. The money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (a) demand deposit accounts and/or (b) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. Any interest earned on the Escrow Account shall inure to the benefit of the Settlement Class as part of the Settlement Payment, if practicable. The Settlement Administrator shall be responsible for all tax filings with respect to the Escrow Account.

1.13    "**Fee Award**" means the amount of attorneys' fees and reimbursement of costs awarded to Class Counsel by the Court to be paid out of the Settlement Fund.

1.14    "**Final Approval Hearing**" means the hearing before the Court where Plaintiff will request that the Final Approval Order be entered by the Court finally approving the Settlement as fair, reasonable, adequate, and approving the Fee Award and the incentive award to the Class Representative.

1.15    "**Final Approval Order**" means the final approval order to be entered by the Court approving the settlement of the Action in accordance with this Settlement Agreement after the Final Approval Hearing, and dismissing the Action with prejudice.

1.16    "**Notice**" means the notice of the proposed Settlement and Final Approval Hearing, which is to be disseminated to the Settlement Class substantially in the manner set forth

in this Settlement Agreement, fulfills the requirements of Due Process and Federal Rule of Civil

Procedure 23, and is substantially in the form of Exhibits A, B and C attached hereto.

1.17    "**Notice Date**" means the date by which the Notice is disseminated to the

Settlement Class, which shall be a date no later than twenty-eight (28) days after entry of the

Preliminary Approval Order.

1.18    "**Objection/Exclusion Deadline**" means the date by which a written objection to

the Settlement Agreement by a Class Member must be filed with the Court or a request for

exclusion submitted by a person within the Settlement Class must be postmarked or received by

the Settlement Administrator, which shall be designated as a date fifty-six (56) days after the

Notice Date, as approved by the Court. The Objection/Exclusion Deadline will be set forth in the

Notice and on the Settlement Website.

1.19    "**Preliminary Approval Order**" means the Court's order preliminarily approving

the Agreement, certifying the Settlement Class for settlement purposes, and approving the form

and manner of the Notice.

1.20    "**Released Claims**" means any and all actual, potential, filed, unfiled, past and

present claims or causes of action, whether known or unknown (including "Unknown Claims" as

defined below), damages, whether statutory, punitive, exemplary or liquidated, expenses, costs,

attorney's fees and or obligations, whether in law or in equity, including any claims, which were

or could have been brought, arising out of the Illinois Biometric Information Privacy Act, or any

similar federal, state, or local statute, regulations, or common law related to biometric

information or biometric identifiers, including, but not limited to, any tort or privacy claims,

arising out of or relating to Defendant's alleged collection, possession, capture, purchase, receipt

through trade, obtaining, sale, profit from, disclosure, redisclosure, dissemination, storage,

9

transmittal, and/or protection from disclosure of alleged biometric information or biometric identifiers through the use of finger scanners or kiosks at Defendant's Illinois facilities.

1.21    "**Released Parties**" means Octapharma Plasma, Inc., and all of its present or former administrators, predecessors, successors, assigns, parent namely Octapharma Plasma, AG, subsidiaries, holding companies, investors, sister and affiliated companies, divisions, associates, affiliated and related entities, employers, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, vendors, accountants, fiduciaries, financial and other advisors, investment bankers, insurers, reinsurers, employee benefit plans, underwriters, shareholders, lenders, auditors, investment advisors, and any and all present and former companies, firms, trusts, corporations, officers and directors. Released Parties shall not include Haemonetics Corporation and/or its parents, affiliates, and subsidiaries.

1.22    "**Releasing Parties**" means Plaintiff and each Settlement Class Member and their respective present or past heirs, executors, estates, administrators, assigns and agents.

1.23    "**Settlement**" means the final resolution of the Action as embodied by the terms and conditions of this Agreement.

1.24    "**Settlement Administration Expenses**" means the expenses reasonably incurred by the Settlement Administrator in or relating to administering the Settlement, providing Notice, creating and maintaining the Settlement Website, receiving and processing Claim Forms, disbursing Settlement Payments, and other such related expenses, with all such expenses to be paid from the Settlement Fund.

1.25    "**Settlement Administrator**" means Kroll Settlement Administration, LLC, subject to approval of the Court, which will provide the Notice, create and maintain the

Settlement Website, receive and process Claim Forms, send Settlement Payments to Settlement Class Members, be responsible for tax reporting, and perform such other settlement administration matters set forth herein or contemplated by the Settlement.

1.26 "**Settlement Class**" means all persons who scanned their finger and provided an Illinois address at an Octapharma plasma donation facility located in Illinois between December 2, 2014 and February 4, 2020. Excluded from the Settlement Class are: (1) any Judge or Magistrate presiding over this action and members of their families, (2) Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, (3) persons who properly execute and file a timely request for exclusion from the Settlement Class, and (4) the legal representatives, successors, heirs, or assigns of any such excluded persons.

1.27 "**Settlement Class Member**" or "**Class Member**" means a person who falls within the definition of the Settlement Class and who does not submit a valid request for exclusion from the Settlement Class.

1.28 "**Settlement Fund**" means the non-reversionary cash fund that shall be established by Defendant and cause to be paid in the amount of Nine Million Nine Hundred Eighty-Seven Thousand Three Hundred Eighty Dollars ($9,987,380.00) to be deposited into the Escrow Account, plus all interest earned thereon. Defendant shall fully fund the Escrow Account within the later of (a) fourteen (14) days after the entry of the Preliminary Approval Order, or (b) the date that the Settlement Administrator provides adequate payment instructions and a W-9 for the Settlement Fund. The Settlement Fund shall satisfy all monetary obligations of Defendant (or any other Released Party) under this Settlement Agreement, including the Settlement Payments, Settlement Administration Expenses, Fee Award, litigation costs, incentive award, taxes, and any

other payments or other monetary obligations contemplated by this Agreement or the Settlement. Under no circumstances shall Defendant be required to provide settlement funding or pay any attorneys' fees, costs, incentive awards, taxes or Settlement Administration Expenses that, taken together, exceed the amount of Nine Million Nine Hundred Eighty-Seven Thousand Three Hundred Eighty Dollars ($9,987,380.00), *except* as set forth in Section 7.2. The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the above-listed payments are made. In no event shall any amount paid by Defendant into the Escrow Account, or any interest earned thereon, revert to Defendant or any other Released Party. The Escrow Account and the Settlement Funds are to be provided to the Settlement Administrator and maintained by an escrow agent as a Court-approved Qualified Settlement Fund pursuant to Section 1.468B-1 et. seq. of the Treasury Regulations promulgated under Section 468B of the Internal Revenue Code of 1986, as amended.

1.29　"**Settlement Payment**" means a *pro rata* portion of the Settlement Fund less any Fee Award, incentive award to the Class Representative, and Settlement Administration Expenses.

1.30　"**Settlement Website**" means the website to be created, launched, and maintained by the Settlement Administrator, which will provide access to relevant settlement administration documents, including the Notice, relevant court filings, and the ability to submit Claim Forms online. The Settlement Website shall be live and active by the Notice Date, and the URL of the Settlement Website shall be www.OPIBIPASettlement.com, or such other URL as the Parties may subsequently agree to.

1.31  **"Unknown Claims"** means claims that could have been raised in the Action and that Plaintiff, any member of the Settlement Class or any Releasing Party, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, to object or not to object to the Settlement. Upon the Effective Date, Plaintiff, the Settlement Class, and the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of Section 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, each of the Releasing Parties shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state, the District of Columbia or territory of the United States, by federal law, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Plaintiff, the Settlement Class, and the Releasing Parties acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the Release, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Section.

## 2.  SETTLEMENT RELIEF

### 2.1  **Settlement Payments to Settlement Class Members**.

a.    Settlement Class Members shall have until the Claims Deadline to submit

Claim Forms. Each Settlement Class Member who submits an Approved Claim shall be entitled to a Settlement Payment.

b.　　Within fourteen (14) days after the Claims Deadline, the Settlement Administrator shall process all Claim Forms submitted by Settlement Class Members and shall determine which claims are valid and initially approved and which claims are initially rejected.

c.　　Within fourteen (14) days of the Claims Deadline, the Settlement Administrator will submit to Class Counsel and Defendant's Counsel a report listing all initially approved and initially rejected Claims.

d.　　Class Counsel and Defendant's Counsel shall have fourteen (14) days after the date they receive the report listing the initially approved and initially rejected claims to audit and challenge any initially approved or initially rejected claims. Class Counsel and Defendant's Counsel shall meet and confer in an effort to resolve any disputes or disagreements over any initially approved or rejected claims. The Settlement Administrator shall have the authority for determining if Settlement Class Members' Claim Forms are complete, timely, and accepted as an Approved Claim.

e.　　Within twenty-eight (28) days of the Effective Date, or such other date as the Court may set, the Settlement Administrator shall send Settlement Payments from the Settlement Fund by electronic deposit or by check via First Class U.S. Mail to the address provided on the Approved Claim Form, as elected by the Class Member with an Approved Claim.

f.　　Each payment issued to a Class Member by check will state on the face of the check that it will become null and void unless cashed within ninety (90) calendar days

after the date of issuance.

g.      In the event that an electronic deposit to a Class Member is unable to be processed, the Settlement Administrator shall attempt to contact the Class Member within thirty (30) calendar days to correct the problem.

h.      To the extent that a check issued to a Settlement Class Member is not cashed within ninety (90) days after the date of issuance or an electronic deposit is unable to be processed within ninety (90) days of the first attempt, such funds shall be distributed as *cy pres* to the American Civil Liberties Union of Illinois, earmarked to support its Government Accountability and Personal Privacy efforts (a non-profit organization that advocates to protect Illinoisans' privacy rights), subject to approval by the Court, and/or any other recipient selected by the Court.

2.2   **Prospective Relief.**

a.      Defendant agrees that, on or before the Effective Date, it shall implement and/or continue to implement the following policies and procedures should Defendant continue to use a donor identification system that collects and/or retains biometric identifiers (such as fingerprints) or any information based on biometric identifiers used to identify donors (collectively referred to herein as "biometric data") from Illinois donors:

i.      Defendant shall establish and maintain or continue to establish and maintain a written policy, made available to the public, creating a retention schedule and guidelines for permanently destroying any biometric data, when the initial purpose for collecting or obtaining such biometric data has been satisfied or within three (3) years of the individual's last interaction with Defendant, whichever occurs first;

15

ii.   Defendant shall destroy all biometric data of donors pursuant to its retention and deletion policy;

iii.   Defendant shall obtain or continue to obtain a written release in electronic format, from all Illinois donors whose biometric data it collects, captures, purchases, receives through trade, or otherwise obtains, to collect those persons' biometric data, and shall inform those persons of the specific purposes and length of term for which their biometric data is being collected, stored, or used.

b.   Defendant further agrees to destroy all biometric data in its possession from past Illinois donors who have not visited an Octapharma facility in three (3) years or more.

## 3. RELEASE

3.1  **The Release.** Upon the Effective Date, and in consideration of the settlement relief and other consideration described herein, the Releasing Parties, and each of them, shall be deemed to have released, and by operation of the Final Approval Order shall have, fully, finally, and forever released, acquitted, relinquished and completely discharged the Released Parties from any and all Released Claims.

## 4. NOTICE TO THE CLASS

4.1  The Notice shall include:

a.   *Class List.* Defendant shall provide the Settlement Administrator a list of all names, e-mail addresses (to the extent maintained by Defendant), and last known U.S. Mail addresses of all persons in the Settlement Class (the "Class List") as soon as practicable, but by no later than fourteen (14) days after the entry of Preliminary Approval Order by the Court. The Settlement Administrator shall keep the Class List and

all personal information obtained therefrom, including the identity and mailing addresses of all persons strictly confidential. The Class List may not be used by the Settlement Administrator for any purpose other than advising specific individual Settlement Class members of their rights, mailing Settlement Payments, and otherwise effectuating the terms of the Settlement Agreement or the duties arising thereunder, including the provision of Notice of the Settlement.

        b.     The Notice shall include the best notice practicable, including but not limited to:

           i.    *Update Addresses.*  Prior to mailing any Notice, the Settlement Administrator will update the U.S. mail addresses of persons on the Class List using the National Change of Address database and other available resources deemed suitable by the Settlement Administrator. The Settlement Administrator shall take all reasonable steps to obtain the correct address of any Settlement Class members for whom Notice is returned by the U.S. Postal Service as undeliverable and shall attempt re-mailings as described below in Section 5.1.

           ii.    *Direct Notice.*  The Settlement Administrator shall send Notice via e-mail substantially in the form of <u>Exhibit B</u> to all persons in the Settlement Class for whom an email address is available on the Class List no later than the Notice Date. If no email address is available for a person in the Class List, or in the event transmission of an e-mail Notice results in a "bounce-back," the Settlement Administrator shall, no later than thirty (30) days after the entry of Preliminary Approval, send a Notice via First Class U.S. Mail substantially in the form of

Exhibit A to each such Settlement Class member's physical address in the Class List.

        iii.     *Internet Notice.* Within fourteen (14) days after the entry of the Preliminary Approval Order, the Settlement Administrator will develop, host, administer and maintain a Settlement Website containing the notice substantially in the form of Exhibit C.

        iv.     *CAFA Notice.* Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, Defendant shall cause to be served upon the Attorneys General of the State of Illinois, the Attorney General of the United States, and other required government officials, notice of the proposed settlement as required by law.

4.2    The Notice shall advise the Settlement Class of their rights under the Settlement, including the right to be excluded from or object to the Settlement Agreement or its terms. The Notice shall specify that any objection to this Settlement Agreement, and any papers submitted in support of said objection, shall be received by the Court at the Final Approval Hearing, only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the person making an objection shall file notice of the person's intention to do so and at the same time (a) files copies of such papers the person proposes to submit at the Final Approval Hearing with the Clerk of the Court, (b) files copies of such papers through the Court's CM/ECF system if the objection is from a Settlement Class Member represented by counsel, who must also file an appearance, and (c) sends copies of such papers via e-mail, U.S. mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

4.3     **Right to Object or Comment.** Any Settlement Class Member who intends to object to this Settlement Agreement shall present the objection in writing, which must be personally signed by the objector and must include: (a) the Settlement Class Member's full name and current address, (b) a statement that the objector is a member of the Settlement Class, (c) whether the objection applies only to the objector, to a specific subset of the Settlement Class, or to the entire Settlement Class, (d) the specific grounds for the objection, (e) all documents or writings that the Settlement Class Member desires the Court to consider, (f) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, and (g) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel, who must file an appearance or seek *pro hac vice* admission). Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this Section and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Settlement Agreement at the Final Approval Hearing, shall be foreclosed from seeking any review of this Settlement Agreement or the Final Approval Order by appeal or other means, and shall be deemed to have waived his or her objections and be forever barred from making any such objections in the Action in any other action or proceeding.

4.4     **Right to Request Exclusion.** Any person in the Settlement Class may submit a request for exclusion from the Settlement on or before the Objection/Exclusion Deadline. To be valid, any request for exclusion must (a) be in writing; (b) identify the case name *Crumpton v. Octapharma Plasma, Inc.*, No. 2019-cv-08402 (N.D. Ill.); (c) state the full name and current

address of the person in the Settlement Class seeking exclusion; (d) be signed by the person(s)

seeking exclusion; and (e) be postmarked or received by the Settlement Administrator on or

before the Objection/Exclusion Deadline. In light of the COVID-19 pandemic, the Settlement

Administrator shall create a dedicated e-mail address to receive exclusion requests electronically.

Each request for exclusion must also contain a statement to the effect that "I hereby request to be

excluded from the proposed Settlement Class in *Crumpton v. Octapharma Plasma, Inc.*, No.

2019-cv-08402 (N.D. Ill.)." A request for exclusion that does not include all of the foregoing

information, that is sent to an address or e-mail address other than that designated in the Notice,

or that is not postmarked or electronically delivered to the Settlement Administrator within the

time specified, shall be invalid and the persons serving such a request shall be deemed to remain

Settlement Class Members and shall be bound as Settlement Class Members by this Settlement

Agreement, if approved. Any person who elects to request exclusion from the Settlement Class

shall not (a) be bound by any orders or the Final Approval Order entered in the Action, (b)

receive a Settlement Payment under this Settlement Agreement, (c) gain any rights by virtue of

this Settlement Agreement, or (d) be entitled to object to any aspect of this Settlement

Agreement or the Final Approval Order or Alternative Approval Order. No person may request

to be excluded from the Settlement Class through "mass" or "class" opt-outs.

**5. SETTLEMENT ADMINISTRATION**

    5.1   **Settlement Administrator's Duties.**

        a.   *Dissemination of Notices.* The Settlement Administrator shall disseminate

the Notice as provided in Section 4 of this Settlement Agreement.

        b.   *Undeliverable Notice via U.S. Mail.* If any Notice sent via U.S. mail is

returned as undeliverable, the Settlement Administrator shall forward it to any forwarding

addresses provided by the U.S. Postal Service. If no such forwarding address is provided, the Settlement Administrator shall perform skip traces to attempt to obtain the most recent addresses for such Settlement Class members.

      c.     *Maintenance of Records.* The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement. The Settlement Administrator shall maintain all such records as required by applicable law in accordance with its business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide weekly reports to Class Counsel and Defendant's Counsel with information concerning the Notice, the number of Claim Forms submitted, the number of Approved Claims, any requests for exclusion, and the administration and implementation of the Settlement. The Settlement Administrator shall make available for inspection by Class Counsel and Defendant's Counsel the Claim Forms received by the Settlement Administrator at any time upon reasonable notice. Should the Court request, the Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a post-distribution accounting of all amounts from the Settlement Fund paid to Settlement Class Members, the number and value of checks not cashed, the number and value of electronic payments unprocessed, and the amount distributed to any *cy pres* recipient.

      d.     *Receipt of Requests for Exclusion.* The Settlement Administrator shall receive requests for exclusion from persons in the Settlement Class and provide to Class Counsel and Defendant's Counsel a copy thereof within five (5) business days of the

Objection/Exclusion Deadline. If the Settlement Administrator receives any requests for exclusion or other requests from Settlement Class Members after the Objection/Exclusion Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel.

   e.  *Creation of Settlement Website.* The Settlement Administrator shall create the Settlement Website. The Settlement Website shall include a toll-free phone number and mailing address through which persons in the Settlement Class may contact the Settlement Administrator or Class Counsel directly.

   f.  *Processing Claim Forms*. The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by processing Claim Forms in a rational, responsive, cost effective, and timely manner. The Settlement Administrator shall be obliged to employ reasonable procedures to screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or fraud, including by cross-referencing Approved Claims with the Class List. The Settlement Administrator shall determine whether a Claim Form submitted by a Settlement Class Member is an Approved Claim and shall reject Claim Forms that fail to (1) comply with the instructions on the Claim Form or the terms of this Agreement, or (2) provide full and complete information as requested on the Claim Form. In the event a person submits a timely Claim Form by the Claims Deadline, but the Claim Form is not otherwise complete, then the Settlement Administrator shall give such person reasonable opportunity to provide any requested missing information, which information must be received by the Settlement Administrator no later than twenty-eight (28) calendar days after the Claims Deadline. In the event the Settlement Administrator receives such

22

information more than twenty-eight (28) calendar days after the Claims Deadline, then any such claim shall be denied. The Settlement Administrator may contact any person who has submitted a Claim Form to obtain additional information necessary to verify the Claim Form.

      g.    *Establishment of the Escrow Fund.* The Settlement Administrator shall establish the Escrow Fund, pursuant to the terms of Section 1.12, and maintain the Escrow Fund as a qualified settlement fund throughout the implementation of the Class Settlement in accordance with the Court's Preliminary Approval Order and Final Approval Order.

      h.    *Timing of Settlement Payments.* The Settlement Administrator shall make Settlement Payments contemplated in Section 2 of this Settlement Agreement to all Settlement Class Members, who, if necessary, have completed required tax forms, within twenty-eight (28) days after the Effective Date.

      i.    *Tax Reporting.* The Settlement Administrator shall be responsible for all tax filings related to the Escrow Account, including requesting Form W-9's from Settlement Class Members and performing back-up withholding as necessary, and making any required "information returns" as that term is used in 26 U.S.C. § 1 *et seq.* Neither Class Counsel nor Defendant make any representations regarding the tax treatment of the Settlement Fund nor will Defendant accept any responsibility for the tax treatment to the Settlement Payments received by any Settlement Class Member or the Escrow Account established and maintained by the Settlement Administrator.

## 6.  PRELIMINARY APPROVAL AND FINAL APPROVAL

6.1     **Preliminary Approval.** Promptly after execution of this Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court and shall move the Court to enter a Preliminary Approval Order, which shall include, among other provisions, a request that the Court:

       a.      Appoint Plaintiff as Class Representative of the Settlement Class for settlement purposes only;

       b.      Appoint Class Counsel to represent the Settlement Class;

       c.      Certify the Settlement Class under Federal Rule of Civil Procedure 23, for settlement purposes only;

       d.      Preliminarily approve this Settlement Agreement for purposes of disseminating Notice to the Settlement Class;

       e.      Approve the form and contents of the Notice and the method of its dissemination to members of the Settlement Class; and

       f.      Schedule a Final Approval Hearing after the expiration of the CAFA notice period, to review comments and/or objections regarding this Settlement Agreement, to consider its fairness, reasonableness and adequacy, to consider the application for a Fee Award and incentive award to the Class Representative, and to consider whether the Court shall enter a Final Approval Order approving this Settlement Agreement and dismissing the Action with prejudice.

6.2     **Final Approval.** After Notice to the Settlement Class is given, Class Counsel shall move the Court for entry of a Final Approval Order, which shall include, among other provisions, a request that the Court:

a.     find that it has personal jurisdiction over all Settlement Class Members and subject matter jurisdiction to approve this Settlement Agreement, including all attached Exhibits;

b.     approve the Settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members;

c.     direct the Parties and their counsel to implement and consummate the Settlement according to its terms and conditions;

d.     declare the Settlement to be binding on, and have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiff and all other Settlement Class Members and Releasing Parties;

e.     find that the Notice implemented pursuant to the Settlement Agreement (1) constitutes the best practicable notice under the circumstances, (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action and their rights to object to or exclude themselves from this Settlement Agreement and to appear at the Final Approval Hearing, (3) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to receive notice, and (4) fulfills the requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

f.     find that the Class Representative and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Settlement Agreement;

g.     dismiss the Action on the merits and with prejudice, without fees or costs to any Party except as provided in this Settlement Agreement;

25

h.    incorporate the Release set forth above, make the Release effective as of the Effective Date, and forever discharge the Released Parties as set forth herein;

i.    authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement and its implementing documents (including all Exhibits to this Settlement Agreement) that (i) shall be consistent in all material respects with the Final Approval Order, and (ii) do not limit the rights of Settlement Class Members;

j.    without affecting the finality of the Final Approval Order for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Approval Order, and for any other necessary purpose; and

k.    incorporate other provisions, consistent with the material terms of this Settlement Agreement, as the Court deems necessary and just.

6.3    **Cooperation.** The Parties shall, in good faith, cooperate, assist and undertake all reasonable actions and steps in order to accomplish these required events on the schedule set by the Court, subject to the terms of this Settlement Agreement.

## 7.    TERMINATION OF THE SETTLEMENT AGREEMENT & CONFIRMATORY DISCOVERY

7.1    **Termination.**  Subject to Section 9 below, the Class Representative, on behalf of the Settlement Class, or Defendant, shall have the right to terminate this Agreement by providing written notice of the election to do so to Class Counsel or Defendant's Counsel within ten (10) days of any of the following events: (i) the Court's refusal to enter the Preliminary Approval Order approving of this Agreement in any material respect; (ii) the Court's refusal to enter the Final Approval Order in this Action in any material respect; (iii) the Court's refusal to enter a

26

final judgment in this Action in any material respect; (iv) the date upon which the Final Approval Order is modified or reversed in any material respect by the Seventh Circuit Court of Appeals or the Supreme Court; or (v) the date upon which an Alternative Approval Order is entered, as defined in Section 9.1 of this Agreement, is modified or reversed in any material respect by the Court of Appeals or the Supreme Court. Defendant may terminate this Agreement in the event that more than five percent (5%) of the individuals listed on the Class List submit timely and valid requests for exclusion from the settlement, provided that Defendant provides written notice of the election to do so to Class Counsel within ten (10) days of the Objection/Exclusion Deadline.

7.2 **Confirmatory Discovery.** Defendant represents that the Settlement Class contains approximately 76,826 members. Defendant shall provide appropriate confirmatory discovery regarding the size of the Settlement Class, and the number of unique names for whom a U.S. Mail address and/or e-mail address is available on the Class List, within fourteen (14) days after the Parties execute this Agreement. Should confirmatory discovery reveal that there are greater than 77,826 Settlement Class members, Defendant shall contribute an additional One Hundred Thirty Dollars ($130.00) per person in excess of 77,826 to the Settlement Fund. In the event that there are any disputes that arise from such confirmatory discovery, the Parties agree to request that Judge James Holderman (ret.) assist in resolving such disputes.

8. **INCENTIVE AWARD AND CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

8.1 Defendant agrees that Class Counsel is entitled to reasonable attorneys' fees and unreimbursed expenses incurred in the Action as the Fee Award from the Settlement Fund. The amount of the Fee Award shall be determined by the Court based on petition from Class Counsel. Class Counsel has agreed, with no consideration from Defendant, to limit their request

27

for attorneys' fees and unreimbursed costs to thirty-five percent (35%) of the Settlement Fund, after costs of Notice and administration are deducted. Defendant may challenge the amount requested. Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall remain in the Settlement Fund and be distributed to Settlement Class Members as Settlement Payments. The Fee Award shall be payable within five (5) business days after the Effective Date. Payment of the Fee Award shall be made by the Settlement Administrator via wire transfer to an account designated by Class Counsel after providing necessary information for electronic transfer and relevant tax information.

8.2     Defendant agrees that the Class Representative shall be paid an incentive award in the amount of Five Thousand Dollars ($5,000.00) from the Settlement Fund, in addition to any Settlement Payment pursuant to this Settlement Agreement and in recognition of her efforts on behalf of the Settlement Class, subject to Court approval. Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Section shall remain in the Settlement Fund and be distributed to Settlement Class Members as Settlement Payments. Any incentive award shall be paid from the Settlement Fund (in the form of a check to the Class Representative that is sent care of Class Counsel), within five (5) business days after the Effective Date.

9.     **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

9.1     The Effective Date shall not occur unless and until each and every one of the following events occurs, and shall be the date upon which the last (in time) of the following events occurs subject to the provisions in Section 1.11:

a.      This Agreement has been signed by the Parties, Class Counsel and

Defendant's Counsel;

b.      The Court has entered a Preliminary Approval Order approving the

Agreement;

c.      The Court has entered a Final Approval Order finally approving the

Agreement, or a judgment substantially consistent with this Settlement Agreement that

has become final and unappealable, following Notice to the Settlement Class and a Final

Approval Hearing, as provided in the Federal Rules of Civil Procedure; and

d.      In the event that the Court enters an approval order and final judgment in a

form other than that provided above ("Alternative Approval Order") to which the Parties

have consented, that Alternative Approval Order has become final and unappealable.

9.2     If some or all of the conditions specified in Section 9.1 are not met, or in the event

that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is

terminated or fails to become effective in accordance with its terms, then this Agreement shall be

canceled and terminated subject to Section 9.3, unless Class Counsel and Defendant's Counsel

mutually agree in writing to proceed with this Settlement Agreement. If any Party is in material

breach of the terms hereof, any other Party, provided that it is in substantial compliance with the

terms of this Agreement, may terminate this Settlement Agreement on notice to all other Parties.

Notwithstanding anything herein, the Parties agree that the following shall not prevent the

Settlement Agreement from becoming effective, nor shall they be grounds for termination of the

Agreement: (1) the Court's decision as to the amount of the Fee Award to Class Counsel set

forth above or the incentive award to the Class Representative, regardless of the amounts

awarded, or (2) the Court's determination that it lacks jurisdiction over the claims or persons

such that the Parties will seek to obtain approval of their Settlement Agreement in an appropriate forum.

9.3     If this Settlement Agreement is terminated or fails to become effective for the reasons set forth above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Approval Order or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Settlement Agreement had never been entered into. Should the Court determine it lacks jurisdiction over any part of the Action, including any claim, cause of action, or persons, the Parties agree to seek the approval of this Settlement Agreement, on the same terms, before an appropriate state court.

## 10.     MISCELLANEOUS PROVISIONS.

10.1     The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement. Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking entry of the Preliminary Approval Order and the Final Approval Order, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement.

10.2     Each signatory to this Agreement represents and warrants (a) that the signatory has all requisite power and authority to execute, deliver and perform this Settlement Agreement and to consummate the transactions contemplated herein, (b) that the execution, delivery and

performance of this Settlement Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of each signatory, and (c) that this Settlement Agreement has been duly and validly executed and delivered by each signatory and constitutes its legal, valid and binding obligation.

10.3    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff and the other Settlement Class Members, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.

10.4    The Parties have relied upon the advice and representation of their respective counsel, selected by them, concerning the claims hereby released. The Parties have read and understand fully this Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

10.5    Whether the Effective Date occurs or this Settlement is terminated, neither this Settlement Agreement nor the Settlement contained herein, nor any court order, communication, act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement:

a.      is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission, concession or evidence of, the validity of any Released Claims, the appropriateness of class certification, the truth of any fact alleged by Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the

Settlement Fund, Settlement Payment or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

       b.      is, may be deemed, or shall be used, offered or received against Defendant as, an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

       c.      is, may be deemed, or shall be used, offered or received against Plaintiff or the Settlement Class, or each or any of them as an admission, concession or evidence of, the infirmity or strength of any claims asserted in the Action, the truth or falsity of any fact alleged by Defendant, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

       d.      is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. However, the Settlement, this Settlement Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Settlement Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Settlement Agreement. Moreover, if this Settlement Agreement is approved by the Court, any of the Released Parties may file this Settlement Agreement and/or the Final Approval Order in any action that may be brought against such parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral

estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

e.     is, may be deemed, or shall be construed against Plaintiff and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

f.     is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.6     The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.7     The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

10.8     All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by reference.

10.9     This Settlement Agreement and its Exhibits A–C set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein. No representations, warranties or inducements have been made to any Party

concerning this Settlement Agreement or its Exhibits A–C other than the representations, warranties and covenants contained and memorialized in such documents. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.10   Except as otherwise provided herein, each Party shall bear its own attorneys' fees and costs incurred in any way related to the Action.

10.11   Plaintiff represents and warrants that she has not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other person or party and that she is fully entitled to release the same.

10.12   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

10.13   This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Signature by digital, facsimile, or in PDF format will constitute sufficient execution of this Settlement Agreement. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

10.14   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

10.15    This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois without reference to the conflicts of laws provisions thereof.

10.16    This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties. Whereas all Parties have contributed substantially and materially to the preparation of this Settlement Agreement, it shall not be construed more strictly against one Party than another.

10.17    Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel: Schuyler Ufkes, sufkes@edelson.com, EDELSON PC, 350 North LaSalle Street, 14th Floor, Chicago, Illinois 60654; Daniel T. Graham, dgraham@clarkhill.com, CLARK HILL, PLC, 130 East Randolph Street, Suite 3900, Chicago, IL 60601.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

**MARY CRUMPTON**

Dated: 10/20/2021

By (signature): _____

Name (printed): Mary Crumpton

**EDELSON PC**

Dated: 10/20/21

By (signature): _____

Name (printed): Schuyler Ufkes

Its (title): Associate

**OCTAPHARMA PLASMA, INC.**

Dated: _____

By (signature): _____

Name (printed): _____

Its (title): COO

Dated: 10-20-2021

By (signature): _____

Name (printed): Barry Pomeroy

Its (title): Vice President - Finance

**CLARK HILL, PLC**

Dated: 10-20-2021

By (signature): /s/ Daniel T. Graham

Name (printed): Daniel T. Graham

Its (title): Counsel for Octapharma Plasma, Inc.

# Exhibit A

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

Crumpton v. Octapharma Plasma, Inc.
c/o Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

First-Class
Mail
US Postage
Paid
Permit #__

## OUR RECORDS INDICATE YOU SCANNED YOUR FINGER AT AN OCTAPHARMA PLASMA DONATION FACILITY IN ILLINOIS AND ARE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

|||||||||||||||||||||||||||
Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1» «Addr2»
«City», «St» «Zip» «Country»

By Order of the Court Dated: [date]

### XXX

---

**CLAIM FORM**

THIS CLAIM FORM MUST BE SUBMITTED ONLINE OR POSTMARKED BY [CLAIMS DEADLINE] AND MUST BE FULLY COMPLETED, BE SIGNED, AND MEET ALL CONDITIONS OF THE SETTLEMENT AGREEMENT.

**Instructions:** Fill out each section of this form and sign where indicated. If you prefer to receive payment via Venmo, PayPal, Zelle, Prepaid Mastercard, or Direct Deposit (instead of a check), you must submit a Claim Form online on the Settlement Website at www.[tobedetermined].com. If you submit this paper Claim Form by mail and it is approved, you will receive a check in the mail at the address you provide below. Depending on the number of valid claims submitted, you may need to complete an IRS Form W-9 to satisfy tax reporting obligations. You may complete the Form W-9 now on the Settlement Website at www.[tobedetermined].com; doing so now will ensure that you receive your full payment as soon as possible.

Name (First, M.I., Last): _____   _____   _____

Street Address: _____

City: _____   State: ____ ____   Zip Code: ____ ____ ____ ____ ____

Email Address (optional): _____

Contact Phone #: ( ___ ___ ___) ___ ___ ___ – ___ ___ ___ ___ (You may be contacted if further information is required.)

Settlement Class Member Verification: By submitting this Claim Form, I declare that I am an individual who scanned my finger at an Octapharma plasma donation facility located in Illinois and provided an Illinois address between December 2, 2014 and February 4, 2020.

Signature: _____   Date: ___ ___/ ___ ___/ ___ ___

Print Name: _____

The Settlement Administrator will review your Claim Form. If accepted, you will be mailed a check for a *pro rata* share depending on the number of valid claim forms received. This process takes time, please be patient.

**Questions, visit www.[tobedetermined].com or call [toll free number]**

This notice is to inform you that a proposed settlement has been reached in a class action lawsuit between Octapharma Plasma, Inc ("Octapharma") and certain plasma donors who scanned their finger at an Octapharma plasma donation facility in Illinois and listed an Illinois address  The lawsuit claims that Octapharma violated an Illinois law called the Illinois Biometric Information Privacy Act when it collected individual donors' biometric data when they used a finger-scanning donor identification system, without complying with the law's requirements  Octapharma denies those allegations and the law's applicability to Octapharma  The Court has not decided who is right or wrong  Please read this notice carefully  Your legal rights are affected whether you act, or don't act

**Who is included in the Settlement Class?** Our records indicate that you are included in the Settlement Class  The Settlement Class includes all persons who scanned their finger and provided an Illinois address at an Octapharma plasma donation facility located in Illinois between December 2, 2014 and February 4, 2020

**What can I get out of the settlement?** If you're eligible and the Court approves the settlement, you can file a claim to receive a cash payment  The payment amount is estimated to be approximately $400 to $800, but could be more or less depending on the number of valid claims submitted  This amount is an equal share of a $9,987,380 fund that Octapharma agreed to create, after any Court-approved payment of settlement expenses, attorneys' fees, and any incentive award

**How do I get my payment?** Just complete and return the attached Claim Form by mail, or you can visit the Settlement Website, www [tobedetermined] com, and submit a Claim Form online  ***All Claim Forms must be postmarked or submitted online by [Claims Deadline].***

**What are my Options?** You can do nothing, comment on or object to any of the settlement terms, or exclude yourself from the settlement  If you do nothing, you won't get a payment, and you won't be able to sue Octapharma or certain related companies and individuals in a future lawsuit about the claims addressed in the settlement  You can also comment on or object to the settlement if you disagree with any of its terms by writing to the Court  If you exclude yourself, you won't get a payment but you'll keep your right to sue Octapharma on the issues the settlement concerns  You must contact the settlement administrator by mail or e-mail to exclude yourself from the settlement  ***All Requests for Exclusion and Objections must be received by [Objection/Exclusion Deadline].***

**Do I have a lawyer?** Yes  The Court has appointed lawyers from the law firm Edelson PC and Fish Potter Bolaños, P C  as "Class Counsel "  They represent you and other Settlement Class Members  The lawyers will request to be paid from the total amount that Octapharma agreed to pay to the Settlement Class Members  You can hire your own lawyer, but you'll need to pay that lawyer's legal fees if you do  The Court has also chosen Mary Crumpton—a class member like you—to represent the Settlement Class

**When will the Court approve the settlement?** The Court will hold a final approval hearing on [date] at [time] before the Honorable Virginia M  Kendall in Room 2503 at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604  Instructions for participating remotely will be posted on the Settlement Website  During the hearing, the Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses of up to 35% of the Settlement Fund and an incentive award of $5,000  The request will be posted on the Settlement Website by [two weeks prior to Objection/Exclusion Deadline]

---

NO POSTAGE
NECESSARY
IF MAILED IN
THE UNITED
STATES

Crumpton v. Octapharma Plasma, Inc. Settlement
c/o Settlement Administrator
PO Box 0000
City, ST 00000-0000

XXX

Exhibit B

From: tobedetermined@domain.com
To: JohnDoeClassMember@domain.com
Re: Legal Notice of Proposed Class Action Settlement

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
*Crumpton v. Octapharma Plasma, Inc.*, No. 19-cv-08402
(United States District Court for the Northern District of Illinois)

## OUR RECORDS INDICATE YOU SCANNED YOUR FINGER AT AN OCTAPHARMA PLASMA DONATION FACILITY IN ILLINOIS AND ARE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

*This is an official court notice. You are <u>not</u> being sued. This is <u>not</u> an ad for a lawyer.*

*For more information, visit www.[tobedetermined].com.*
*Para una notificacion en Espanol, visitar www.[tobedetermined].com.*

This notice is to inform you that a proposed settlement has been reached in a class action lawsuit between Octapharma Plasma, Inc. ("Octapharma") and certain plasma donors who scanned their finger and listed an Illinois address at an Octapharma plasma donation facility in Illinois. The lawsuit claims that Octapharma violated an Illinois law called the Illinois Biometric Information Privacy Act ("BIPA") when it collected individuals' biometric data when they used a finger-scanning donor identification system, without complying with the law's requirements. Octapharma denies these allegations and denies that it is subject to or violated BIPA. The Court has not decided who is right or wrong. Please read this notice carefully. Your legal rights are affected whether you act, or don't act.

**Who is included in the Settlement Class?** Our records indicate that you are included in the Settlement Class. The Settlement Class includes all persons who scanned their finger and provided an Illinois address at an Octapharma plasma donation facility located in Illinois between December 2, 2014 and February 4, 2020.

**What can I get out of the settlement?** If you're eligible and the Court approves the settlement, you can file a claim to receive a cash payment. The payment amount is estimated to be approximately $400 to $800, but could be more or less depending on the number of valid claims submitted. This amount is an equal share of a $9,987,380 fund that Octapharma agreed to create, after any Court-approved payment of settlement expenses, attorneys' fees, and any incentive award.

**How do I get my payment?** Just complete and verify the short and simple Claim Form online at [Claim Form Link], or you can visit www.[tobedetermined].com and download a paper Claim Form and submit it by mail. By submitting online you can choose to receive your payment via Venmo, PayPal, Zelle, Prepaid Mastercard, or Direct Deposit (instead of a check). ***All Claim Forms must be submitted online or postmarked by [Claims Deadline].***

**What are my Options?** You can do nothing, comment on or object to any of the settlement terms, or exclude yourself from the settlement. If you do nothing, you won't get a payment, and you won't be able to sue Octapharma or certain related companies and individuals in a future lawsuit about the

claims addressed in the settlement. You can also object to the settlement if you disagree with any of its terms by writing to the Court. If you exclude yourself, you won't get a payment but you'll keep your right to sue Octapharma on the issues the settlement concerns. You must contact the settlement administrator by mail or email ([email address]) to exclude yourself from the settlement. ***All Requests for Exclusion and Objections must be received by [Objection/Exclusion Deadline].***

**<u>Do I have a lawyer?</u>** Yes. The Court has appointed lawyers from the law firms Edelson PC and Fish Potter Bolaños, P.C. as "Class Counsel." They represent you and other Settlement Class Members. The lawyers will request to be paid from the total amount that Octapharma agreed to pay to the class members. You can hire your own lawyer, but you'll need to pay that lawyer's legal fees if you do. The Court has also chosen Mary Crumpton—a class member like you—to represent the Settlement Class.

**<u>When will the Court approve the settlement?</u>** The Court will hold a final approval hearing on [date] at [time] before the Honorable Virginia M. Kendall in Room 2503 at the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604. Instructions for participating remotely will be posted on the Settlement Website. During the hearing, the Court will hear objections, determine if the settlement is fair, and consider Class Counsel's request for fees and expenses of up to 35% of the Settlement Fund and an incentive award of $5,000. The fee request will be posted on the settlement website by [two weeks prior to Objection/Exclusion Deadline].

Exhibit C

<u>UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS</u>

*Crumpton v. Octapharma Plasma, Inc.*, Case No. 19-cv-08402

**IF YOU SCANNED YOUR FINGER AT AN OCTAPHARMA PLASMA FACILITY IN ILLINOIS BETWEEN DECEMBER 2, 2014 AND FEBRUARY 4, 2020, YOU CAN CLAIM A PAYMENT FROM A CLASS ACTION SETTLEMENT.**

***This is an official court notice. You are <u>not</u> being sued. This is <u>not</u> an ad for a lawyer.***

- A Settlement has been reached in a class action lawsuit between Octapharma Plasma, Inc. ("Defendant" or "Octapharma") and certain plasma donors who scanned their finger at an Octapharma plasma donation facility in the State of Illinois and listed an Illinois address. The lawsuit claims that Octapharma violated an Illinois law called the Illinois Biometric Information Privacy Act ("BIPA") when it collected individuals' biometric data through its donor identification system with a finger scanner without complying with the law's requirements. Octapharma denies those allegations and the law's applicability to Octapharma. The Court has not decided who is right or wrong. The Settlement has been preliminarily approved by a federal court in Chicago, Illinois.

- You are included in the Settlement if you scanned your finger and provided an Illinois address at an Octapharma blood plasma donation facility between December 2, 2014 and February 4, 2020. If you received a notice of the Settlement in the mail or by e-mail, our records indicate that you are a Settlement Class Member and are included in the Settlement, and you may submit a claim form online or by mail to receive a cash payment.

- If the Court approves the Settlement, members of the Class who submit valid claims will receive an equal, or *pro rata*, share of a $9,987,380 settlement fund that Octapharma has agreed to establish, after all notice and administration costs, incentive award, and attorneys' fees have been paid. Individual payments to Settlement Class Members who submit a valid Claim Form are estimated to be $400 to $800, but could be more or less depending on the number of valid claims submitted.

- Please read this notice carefully. Your legal rights are affected whether you act, or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM** | This is the only way to receive a payment. You must submit a complete and valid claim form either online or by mail before [**Claims Deadline**]. |
| **DO NOTHING** | You will receive no payment under the Settlement and give up your rights to sue Octapharma or certain related companies and individuals about the issues in this case. |
| **EXCLUDE YOURSELF** | You will receive no payment, but you will retain any rights you currently have to sue Octapharma about the issues in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **ATTEND A HEARING** | Ask to speak in Court about the fairness of the Settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this notice.

The Court in charge of this case still has to decide whether to approve the Settlement. Payments will be provided only after any issues with the Settlement are resolved. Please be patient.

## BASIC INFORMATION

### 1. What is this notice and why should I read it?

The Court authorized this notice to let you know about a proposed Settlement with Octapharma. You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement. You may be eligible to receive a cash payment as part of the Settlement. This notice explains the lawsuit, the Settlement, and your legal rights.

Judge Virginia M. Kendall of the United States District Court for the Northern District of Illinois is overseeing this class action. The case is called *Crumpton v. Octapharma Plasma, Inc.*, Case No. 19-cv-08402. The person who filed the lawsuit, Mary Crumpton, is the Plaintiff. The company she sued, Octapharma Plasma, Inc., is the Defendant.

### 2. What is a class action lawsuit?

A class action is a lawsuit in which an individual called a "Class Representative" brings a single lawsuit on behalf of other people who have similar legal claims. All of these people together are a "Class" or "Class Members." Once a Class is certified, a class action Settlement finally approved

2

by the Court resolves the issues for all Settlement Class Members, except for those who exclude themselves from the Settlement Class.

## THE CLAIMS IN THE LAWSUIT AND THE SETTLEMENT

| 3. What is this lawsuit about? |
| --- |

The Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, prohibits private companies from capturing, obtaining, storing, and/or using the biometric identifiers and/or biometric information of another individual for any purpose, without first providing notice and getting consent in writing. Biometrics are things like your fingerprint, faceprint, or a scan or your iris. This lawsuit alleges that Octapharma violated BIPA by allegedly collecting biometric fingerprint data from Illinois plasma donors who scanned their fingers for identification through Octapharma's donor management system before donating plasma at its Illinois plasma donation facilities, without giving notice or getting consent. Octapharma denies these allegations and denies that it was subject to or violated BIPA.

More information about Plaintiff's complaint in the lawsuit and the Defendant's defenses can be found in the "Court Documents" section of the settlement website at www.[tobedetermined].com.

| 4. Who is included in the Settlement Class? |
| --- |

You are a member of the Settlement Class if you scanned your finger and provided an Illinois address at an Octapharma plasma donation facility located in Illinois between December 2, 2014 and February 4, 2014. If you scanned your finger at an Octapharma plasma donation facility in Illinois during that time-period, you may be a class member and may submit a [Claim Form link] for a cash payment. If you received a notice of the Settlement via email or in the mail, our records indicate that you are a class member and are included in the Settlement. You may call or email the Settlement Administrator at [phone number] or [email address] to ask whether you are a member of the Settlement Class.

## THE SETTLEMENT BENEFITS

| 5. What does the Settlement provide? |
| --- |

**Cash Payments.** If you're eligible, you can file a claim to receive a cash payment. The amount of such payment is estimated to be around $400 to $800, but the exact amount is unknown at this time and could be more or less depending on the number of valid Claim Forms submitted. This is a *pro rata*, or equal, share of a $9,987,380 fund that Octapharma has agreed to create, after the payment of settlement expenses, attorneys' fees, and any incentive award for the Class Representative in the litigation approved by the Court.

**Prospective Relief.** Under the settlement, Octapharma has agreed to take all steps necessary to comply with BIPA by obtaining written releases from Illinois donors who use a finger scanner, making all BIPA-required disclosures, establishing and maintaining a publicly-available retention policy, and destroying all fingerprint data from past donors within three years of their last interaction with Octapharma.

## HOW TO GET SETTLEMENT BENEFITS

**6.   How do I get a payment?**

If you are a Settlement Class member and you want to get a payment, you must complete and submit a valid Claim Form by [Claims Deadline]. If you received an email notice, it contained a link to the online Claim Form, which is also available on this website here [Claim Form Link] and can be filled out and submitted online. The online claim form lets you select to receive your payment by Venmo, Zelle, Paypal, Prepaid Mastercard, ACH Direct Deposit, or check. A paper Claim Form with pre-paid postage was attached to the postcard notice you may have received in the mail. Those who submit a paper Claim Form will receive a check by mail, if the claim is approved.

The Claim Form requires you to provide the following information: (i) full name, (ii) current U.S. Mail address, (iii) current contact telephone number and email address, and (iv) a statement that you scanned your finger at an Octapharma plasma donation facility located in Illinois and provided an Illinois address between December 2, 2014 and February 4, 2020.

Depending on the number of valid Claim Forms submitted, you may need to complete an IRS Form W-9 to satisfy IRS tax reporting obligations related to the payment. You may complete the [Form W-9 link] now on the settlement website; doing so now will ensure that you receive your full payment as soon as possible.

**7.   When will I get my payment?**

The hearing to consider the fairness of the Settlement is scheduled for [**Final Approval Hearing Date**]. If the Court approves the Settlement, Class Members whose claims were approved by the Settlement Administrator and, if necessary, who have completed a W-9 Form on the settlement website will be issued a check or electronic payment (as chosen by the Class Member) within 60 days after the Settlement has been finally approved by the Court and/or after any appeals process is complete. Please be patient. Uncashed checks and electronic payments that are unable to be completed will expire and become void 90 days after they are issued and will be donated to the American Civil Liberties Union of Illinois, earmarked to support its Government Accountability and Personal Privacy efforts, or such other not-for-profit organization(s) as the Court may order as *cy pres* recipient.

## THE LAWYERS REPRESENTING YOU

**8.   Do I have a lawyer in the case?**

Yes, the Court has appointed lawyers Jay Edelson, J. Eli Wade-Scott, and Schuyler Ufkes of Edelson PC and David Fish of Fish Potter Bolaños, P.C. as the attorneys to represent you and other Class Members. These attorneys are called "Class Counsel." In addition, the Court appointed Plaintiff Mary Crumpton to serve as the Class Representative. She is a Class Member like you. Class Counsel can be reached by calling 1-866-354-3015.

**9.   Should I get my own lawyer?**

You don't need to hire your own lawyer because Class Counsel is working on your behalf. You may hire your own lawyer, but if you do so, you will have to pay that lawyer.

## 10.  How will the lawyers be paid?

Class Counsel will ask the Court for attorneys' fees and expenses of up to 35% of the Settlement Fund, and will also request an incentive award of $5,000 for the Class Representative from the Settlement Fund. The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel and the proper amount of any award to the Class Representative. The Court may award less than the amounts requested.

### YOUR RIGHTS AND OPTIONS

## 11.  What happens if I do nothing at all?

If you do nothing, you will receive no money from the Settlement Fund, but you will still be bound by all orders and judgments of the Court. Unless you exclude yourself from the Settlement, you will not be able to file or continue a lawsuit against Octapharma or other Released Parties regarding any of the Released Claims. **Submitting a valid and timely Claim Form is the only way to receive a payment from this Settlement.**

To submit a Claim Form, or for information on how to request exclusion from the class or file an objection, please visit the settlement website, www.[to be determined].com, or call (XXX) XXX-XXXX.

## 12. What happens if I ask to be excluded?

You may exclude yourself from the Settlement. If you do so, you will not receive any cash payment, but you will not release any claims you may have against the Released Parties (as that term is defined in the Settlement Agreement) and are free to pursue whatever legal rights you may have by pursuing your own lawsuit against the Released Parties at your own risk and expense.

## 13.  How do I ask to be excluded?

You can mail or email a letter stating that you want to be excluded from the Settlement. Your letter must: (a) be in writing; (b) identify the case name, *Crumpton v. Octapharma Plasma, Inc.*, 19-cv-08402 (N.D. Ill.); (c) state the full name and current address of the person in the Released Parties Class seeking (d) be signed by the person(s) seeking exclusion; and (e) be postmarked or received by the Settlement Administrator on or before [Objection/Exclusion Deadline]. Each request for exclusion must also contain a statement to the effect that "I hereby request to be excluded from the proposed Settlement Class in *Crumpton v. Octapharma Plasma, Inc.*, 19-cv-08402 (N.D. Ill.)." You must mail or e-mail your exclusion request no later than [Objection/Exclusion Deadline] to:

Crumpton v. Octapharma Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

-or-

[e-mail address]

You can't exclude yourself over the phone. No person may request to be excluded from the Settlement Class through "mass" or "class" opt-outs.

| **14. If I don't exclude myself, can I sue Octapharma for the same thing later?** |
| --- |

No. Unless you exclude yourself, you give up any right to sue Octapharma and any other Released Party for the claims being resolved by this Settlement.

| **15. If I exclude myself, can I get anything from this Settlement?** |
| --- |

No. If you exclude yourself, you will not receive a payment.

| **16. How do I object to the Settlement?** |
| --- |

If you do not exclude yourself from the Settlement Class, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should deny approval by filing an objection. To object, you must file a letter or brief with the Court stating that you object to the Settlement in *Crumpton v. Octapharma Plasma, Inc.*, Case No. 19-cv-08402 (N.D. Ill.), no later than [Objection/Exclusion Deadline]. Your objection must be e-filed or delivered to the Court at the following address:

Clerk of the United States District Court for the Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
219 South Dearborn Street
Chicago, Illinois 60604

Due to the COVID-19 pandemic, the Court is accepting filings from pro se litigants via email. Instructions on how to file via email can be found here.

The objection must be in writing, must be signed, and must include the following information: (a) your full name and current address, (b) a statement that you believe you are a member of the Settlement Class, (c) whether the objection applies only to you, to a specific subset of the Settlement Class, or to the entire Settlement Class, (d) the specific grounds for your objection, (e) all documents or writings that you wish the Court to consider, (f) the name and contact information of any attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection, and (g) a statement indicating whether you intend to appear at the Final Approval Hearing. If you hire an attorney in connection with making an objection, that attorney must file an appearance with the Court or seek *pro hac vice* admission to practice before the Court, and electronically file the objection by the objection deadline of [Objection/Exclusion Deadline]. If you do hire your own attorney, you will be solely responsible for payment of any fees and expenses the attorney incurs on your behalf. If you exclude yourself from the Settlement, you cannot file an objection.

In addition to filing your objection with the Court, you must send via mail, email, or delivery service, by no later than [Objection/Exclusion Deadline], copies of your objection and any supporting documents to both Class Counsel and Octapharma's lawyers at the addresses listed below:

| Class Counsel | Octapharma's Counsel |
|---|---|
| Schuyler Ufkes | Daniel T. Graham |
| sufkes@edelson.com | dgraham@clarkhill.com |
| EDELSON PC | CLARK HILL, PLC |
| 350 North LaSalle Street, 14th Floor | 130 East Randolph Street, Suite 3900 |
| Chicago, Illinois 60654 | Chicago, Illinois 60601 |

Class Counsel will file with the Court and post on the settlement website its request for attorneys' fees and incentive awards on [date 2 weeks before Objection / Exclusion deadline].

## 17. What's the difference between objecting and excluding myself from the Settlement?

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Settlement Class as a Class Member. Excluding yourself from the Settlement Class is telling the Court that you don't want to be a Settlement Class Member. If you exclude yourself, you have no basis to object because the case no longer affects you.

### THE COURT'S FINAL APPROVAL HEARING

## 18. When and where will the Court decide whether to approve the Settlement?

The Court will hold the Final Approval Hearing at [**time**] on [**date**] before the Honorable Virginia M. Kendall in Room 2503 of the Northern District Court of Illinois, Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, 60604, or via remote means as instructed by the Court. The purpose of the hearing is for the Court to determine whether the Settlement is fair, reasonable, adequate, and in the best interests of the Class. At the hearing, the Court will hear any objections and arguments concerning the fairness of the proposed Settlement, including those related to the amount requested by Class Counsel for attorneys' fees and expenses and the incentive award to the Class Representative.

**Note:** The date and time of the Final Approval Hearing are subject to change by Court Order. Any changes will be posted at the settlement website, www.[tobedetermined].com.

## 19. Do I have to come to the hearing?

No. Class Counsel will answer any questions the Court may have. You are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as your written objection was filed or mailed on time and meets the other criteria described in the Settlement, the Court will consider it. You may also pay a lawyer to attend, but you don't have to.

## 20. May I speak at the hearing?

Yes. If you do not exclude yourself from the Settlement Class, you may ask the Court for permission to speak at the hearing concerning any part of the proposed Settlement. If you filed an objection (*see* Question 16 above) and intend to appear at the hearing, you must state your intention to do so in your objection.

### GETTING MORE INFORMATION

| 21.  Where do I get more information? |
|---|

This notice summarizes the proposed Settlement. More details, including the Settlement Agreement and other documents are available at www.[tobedetermined].com or at the Clerk's Office in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois 60604, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays and any closures as a result of the COVID-19 pandemic. You can also contact Class Counsel at 1-866-354-3015 with any questions.

**PLEASE DO <u>NOT</u> CONTACT THE COURT, THE JUDGE, THE DEFENDANT OR THE DEFENDANT'S LAWYERS WITH QUESTIONS ABOUT THE SETTLEMENT OR DISTRIBUTION OF SETTLEMENT PAYMENTS.**